## JAMES W. SINDALL *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL.

*Taxation of Real Estate in the Annexed District of Baltimore City— Construction of the Act of 1888, ch. 98—Effect of the Words " From and After."*

The Act of 1888, ch. 98, by which certain parts of Baltimore County were withdrawn therefrom and added to the municipal limits of Baltimore City, provided that until the year 1900 the rate of taxation upon all property situated within the annexed territory should not exceed the then existing tax rate of the county, and that *from and after* the year 1900 the property, real and personal, within said territory, shall be liable to taxation and assessment in the same manner as similar property

within the city limits, provided, however, that the county rate of taxation shall not be increased on any landed property within said territory until streets shall have been opened and constructed through the same, nor until there shall be upon every block of ground so to be formed, at least six dwellings or store houses ready for occupation. Plaintiff opened a street through a tract of land in the annexed district and built eighteen houses fronting on the same, more than six to a block. The street so opened was never accepted by the municipal authorities. Taxes were assessed upon this property at the city rate for the year 1900. Upon a bill to restrain the collection thereof. *Held,*

1st. That the term "landed property," as used in the Act, means rural property, as distinguished from real estate compactly built upon as in cities ; that when landed property has been laid off into lots and houses have been erected thereon, as though built upon a street, it becomes liable, after the year 1900, to the city tax rate, without regard to the existence of regularly condemned or accepted streets, but when land still remains rural property, it cannot be taxed at the city rate until blocks have been formed by duly opened and constructed streets and until six houses are erected on each block, the whole block being then liable to city taxation.

2nd. That since plaintiff's property had ceased to be rural property it is not within the exemption from taxation at the city rate created by the proviso in the Act.

3rd. That taxes at the city rate cannot be imposed on said property for the year 1900, but only thereafter.

When a statute directs that a thing shall be done *from and after* a certain year, it cannot be done during that year.

Appeal from a *pro forma* decree of the Circuit Court of Baltimore City.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*John Prentiss Poe* and *R. E. Lee Hall,* for the appellant.

*Wm. Pinkney Whyte, City Solicitor,* and *Olin Bryan, First Assistant City Solicitor,* for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

There are two questions presented by this record and the solution of both of them depends on the construction which may be placed on *sec. 19* of *the Act of Assembly of 1888, ch. 98,* known as the Annexation Act, or the Act under which

portions of the territory of Baltimore County were withdrawn from the outlines of the county and added to the municipal limits of Baltimore City.    As the whole section of the statute will have to be examined and considered in disposing of the questions involved, it will now be quoted in full.    It reads as follows: " That until the year nineteen hundred the rate of taxation for city purposes upon all landed property situated within the territory which, under the provisions of this Act, shall be annexed to the city of Baltimore, and upon all personal property liable to taxation in said territory, whether owned by persons, corporations or otherwise, and upon which taxes would be paid to Baltimore County if said territory should not be annexed to the said city, shall at no time exceed the present tax rate of Baltimore County ; and until the year nineteen hundred there shall not be, for the purposes of city taxation, any increase in the present assessment of such property as is now assessed ; and all property in the said territory which is not now assessed, but which may be within the same period liable to assessment, shall be assessed at the same rate as similar property is now assessed in said territory ; and during the said period up to the year nineteen hundred, the city of Baltimore shall expend within said territory an amount at least equal to the amount of revenue derived from taxation on the basis herein set forth from the said territory in affording to the residents within said territory the rights and privileges accorded to and enjoyed by the residents within what are the present limits of said city, but nothing in this Act shall be so construed as to require the expenditure by said city of any greater sum.    From and after the year nineteen hundred, the property, real and personal, in the said territory so annexed shall be liable to taxation and assessment therefor in the same manner and form as similar property within the present limits of said city may be liable ; provided, however, that after the year nineteen hundred the present county rate of taxation shall not be increased for city purposes on any landed property within the said territory until avenues, streets or alleys shall have been opened and constructed through the same, nor until

there shall be upon every block of ground so to be formed at least six dwellings or store houses ready for occupation."

The appellant is the owner of a parcel of land brought within the city limits by the Act just referred to. The area within which this parcel of land is located is bounded on the north by New Boundary avenue, a dedicated but unaccepted, ungraded, unpaved and uncurbed street, laid out by one Clemens, in eighteen hundred and eighty-nine; on the south by a six foot private alley; on the east by the old York road, which was a county highway long before the adoption of the Annexation Act; and on the west by the York turnpike road, which is owned and controlled by a corporation that charges and collects toll for the use of the road. Through the middle of this land owned by the appellant he opened in eighteen hundred and ninety-seven a street forty feet wide, extending from the York road to the York turnpike, and called it Franklin Terrace. This street has not been accepted by the city; nor was it constructed in conformity to *sec. 840* of the city charter. On the north side of this forty-foot street he laid out eleven building lots, and on the south side seven lots, upon all of which he erected houses. Four of the eighteen houses and lots have been sold, but the remaining fourteen are still owned by the appellant.

Now, the two questions at issue in the cause are, *first:* Is the appellant as owner of these fourteen houses and lots liable to pay the current city tax rate on the assessed value of them, or is he still responsible only for the county rate of the year eighteen hundred and eighty-seven, under the provisions of *sec. 19* of the Annexation Act? *Secondly:* If he is liable for the full current city rate does that liability apply to the taxes for the year nineteen hundred, or does it first begin in nineteen hundred and one?

The proviso at the end of the section gives rise to the first question. This proviso is a restriction on the power of the municipality to levy more than a designated rate of taxes on property annexed to the city limits, until a prescribed condition shall be complied with. Like every other exemption

from taxation it must be strictly construed. The taxing power is never presumed to be surrendered, and therefore every assertion that it has been relinquished must, to be efficacious, be distinctly supported by clear and unambiguous legislative enactment. To doubt is to deny an exemption. It is contended that the condition prescribed in the proviso to *sec. 19* requires the Baltimore county rate of taxation which had been fixed just before the Annexation Act took effect to be adhered to for city purposes up to nineteen hundred and one so far as the annexed property is concerned, and to be adhered to "until avenues, streets or alleys shall have been opened and constructed" through this then suburban locality, and, further, "until there shall be upon every block of ground so to be formed" (that is to say, to be formed by avenues, streets or alleys to be opened and constructed) "at least six dwellings or store houses ready for occupation." Is this the true meaning, not of the proviso taken by itself, but of the entire section which has been quoted?

If we were dealing simply with the proviso, not as a mere proviso, but as an independent enactment standing alone, instead of considering it in its relation to the antecedent portion of the section to which it is attached, there would be great, and possibly conclusive, force in the position taken by the appellant, to the effect that the case of *Valentine* v. *City of Hagerstown*, 86 Md. 486, is decisive of the controversy. By *sec. 194, Art. 22, of the Local Code,* concerning the City of Hagerstown it was enacted that land within the city limits and within the then newly extended limits of Hagerstown should not be assessed for purposes of municipal taxation "until a street shall be laid out and opened through the same; but when a street shall be laid out and opened through said real estate, the land abutting on said street, and improvements thereon, to a distance two hundred and forty feet back from the line of said street, shall be assessed and taxed for municipal purposes as other property in said town is now taxed." Valentine laid out into town lots a parcel of land and caused a plat thereof to be recorded among the land

records of the county. On this plat proposed streets called Carrollton avenue and Carroll street were marked and defined. These streets, though thus dedicated to the public, were never accepted by the municipality, but were used as streets by the owners of the property abutting on them and were generally considered streets of the town. Valentine was charged with municipal taxes on some of the lots abutting on these streets, but his lots were not within two hundred and forty feet of any street which had been laid out by municipal authority. He resisted payment of the tax exacted of him and filed a bill in equity praying that an injunction might issue to restrain its collection. The bill was dismissed, but upon appeal the decree was reversed and this Court held in the course of its judgment, that: "The evident purpose of the Legislature was to limit the power of taxation for municipal purposes to a distance of two hundred and forty feet 'back from the line' of such streets as the corporate authorities saw fit to lay out and open, and was a recognition of the principle that property owners, in consideration of being taxed, should enjoy the benefits of the improvements made with the municipal tax. Whilst it may be true," we went on to say, "that Carrollton avenue and Carroll street have been, since the alleged dedication, used as streets by the owners of property on the map, and may have been generally considered streets of the town, yet there never has been any formal acceptance of either of them by the authorities of the town, and until that has been done, according to law, they have not been 'laid out and opened' within the meaning of the charter; and as the property of the appellant, sought to be taxed, is not within two hundred and forty feet of any street, 'laid out and opened' by the municipal authorities, the contingency which renders it liable to be assessed and taxed for municipal purposes, has not arisen."

It would be quite difficult, perhaps impossible, to distinguish the case at bar from *Valentine's case*, had we nothing before us but the proviso to *sec. 19*. The difference in the phraseology of the two statutes is unimportant, because the meaning of each is the same. The phrase "laid out and

opened" used in the Hagerstown charter is no more compre-
hensive than the terms "opened and constructed" contained
in the proviso to *sec. 19* of the Annexation Act.    Both apply
to precisely similar situations.    If, under one statute, lots
within two hundred and forty feet of a dedicated and actually
opened street were not liable to assessment, because that dedi-
cated and actually opened street had not been accepted by the
municipal authorities and had not, therefore, become a street
of the town; it could not well be held under the proviso to
the other statute, that land which was contained within a
block bounded by a dedicated, but unaccepted street, a private
alley, a county road and a turnpike road, is land within a
block formed by "opened and constructed avenues, streets or
alleys."    If, in the one instance, acceptance by the municipal-
ity was necessary to make the dedicated streets such streets as
were meant by the Legislature, it could not, with consistency,
be said, in the other instance, that acceptance by the munici-
pality of Baltimore was not necessary to make the dedicated
but unaccepted avenue or street such an "opened and con-
structed" avenue or street as the proviso contemplated.

However ingenious this attempt to quadrate the case at bar
with that of Valentine may be, it is untenable.    The two cases
must be viewed from entirely different standpoints.    In *Val-
entine's case* the real question for decision was whether the
property had *ever* been brought within the reach of the taxing
power—whether it was a class of property declared by the
charter of Hagerstown to be taxable at all.    In this case the
question is whether property clearly made liable to assessment
by the body of *sec. 19*, at a fixed rate for a limited period,
though after that period made liable generally, has been ex-
empted from that general liability by the proviso and again
restricted to the same fixed rate until the happening of an en-
tirely new contingency.    This inquiry differently stated is,
whether in reality, the kind of property referred to in the pro-
viso is the same as that which, under an antecedent clause of
the section, became liable to assessment at current city rates
after the lapse of a definite period of time.

It must be borne in mind that at the date of the adoption of the Annexation Act a large part of the added territory was unimproved, outlying, rural land. It would have been manifestly unjust to have subjected such property to the same valuation and to the same rate of taxation as then obtained in the city with respect to distinctively urban property. Accordingly, the nineteenth section specifically provided that "*until* the year nineteen hundred the rate of taxation for city purposes upon all *landed* property" within the annexed territory and "upon all personal property" in the same territory, "shall at no time exceed the present tax rate of Baltimore County." Thus both "landed" and personal property were made liable to the county rate of sixty cents on the hundred dollars uutil the year nineteen hundred. But the section proceeds: "From and after *the year* nineteen hundred the *property, real and personal*" in the annexed territory "shall be liable to taxation and assessment therefor *in the same manner and form* as *similar* property within the present limits of said city may be liable." Here are two definite things declared. First, that until nineteen hundred the *landed* and personal property shall be assessed and taxed at the county rate existing when the Act of 1888 went into effect. Secondly, that from and after the year nineteen hundred "the property, *reai* and personal" shall be assessed in the same manner and form and shall be liable to taxation in the same manner and form as *similar* property within the city's old limits might be liable. Now, if there had been no proviso it is perfectly clear that *all* property, real and personal, whether unimproved land, "landed property," or land laid out in lots and improved with dwellings or places of business—would have been liable "from and after the year nineteen hundred" to precisely the same rate of taxation as unimproved land, or lots with houses or business places thereon within the old limits, were liable. To make that result certain beyond cavil the term "landed property," used in the beginning of the section, was dropped when the Legislature came to describe what kind of property was to be subjected to taxation at current

city rates from and after the year nineteen hundred, and the phrase "property, real and personal" was substituted. But it was no doubt considered probable that there might be considerable "landed property" still unimproved even after the year nineteen hundred ; and to meet that contingency the proviso was added. By the terms of that proviso the antecedent broad provision, subjecting after the year nineteen hundred *all* property in the belt, "real and personal" to the same rate of taxation to which similar property in the city would be liable, was suspended as to *landed* property not comprised in blocks included within avenues, streets or alleys and not improved by at least six houses. Thus it is obvious that whilst the body of the section subjected *all* real estate within the belt to current city rates from and after the year nineteen hundred, the proviso created an exemption from that imposition in favor of *landed* property which could not be strictly classed as city property because not built upon and not situated within a block formed by city streets or avenues. But when that which had been "landed property" had been built up it became, after the year nineteen hundred, liable to taxation at current city rates without the slightest reference to the existence or nonexistence of streets regularly laid out by the city or dedicated by others and accepted by the city. The term "landed property," as used in the beginning of the section and in the proviso, evidently meant rural property as contradistinguished from real estate which for all practical purposes was city property because actually laid out in city lots on which dwellings were constructed that abutted on proposed or projected streets or subsisting highways ultimately to be converted into regularly graded avenues or streets. Under the proviso when this rural property comes to be divided into blocks by intersecting streets, so laid out and constructed as to be strictly city streets, it will then be liable to the city tax rate, even though each block has but six houses upon it, and even though it be not laid off in building lots. Under the body of section nineteen, making *all* real estate liable to be taxed at current city rates from and after nineteen hundred without regard to the forma-

tion of blocks by the opening and construction of avenues, streets or alleys, land laid off in lots and improved with dwellings became liable to taxation at current city rates, because it then ceased to be " landed property " in the sense of unimproved rural land and was required to be dealt with, for the purposes of taxation, as similar property—not similarly situated property—within the original limits of the city, without any reference whatever to blocks or streets forming blocks. To be within the exemption created by the proviso the property must be "*landed* property," that is, rural unimproved land not laid out in lots and not compactly built on as in a city. It is significant that this term " landed property " does not occur in the general assessment laws when assessable property is described. Property there spoken of is real and personal. It is apparent that there was some design in departing from long-established precedents in this particular and in using this phrase instead of employing the terms ordinarily adopted ; and what that design was seems quite manifest when it is remembered that in the same section the usual words " real and personal " property are inserted to describe the property to be valued and taxed from and after the year nineteen hundred, as similar property is valued and taxed in the city ; that is to say, as improved property is taxed in the city or as lots laid out for buildings are there taxed. Whenever, then, this formerly rural property has been laid off in lots and houses have been erected thereon as though built upon a street, it becomes liable to the current city tax rate without the slightest reference to the existence of regularly condemned or accepted streets ; but when the property still remains rural property then it cannot be taxed as city property until blocks have been formed by duly opened and constructed streets and until six houses are erected on each block. There are, therefore, two conditions under which the full city tax rate may be imposed upon this annexed property. First, when the " landed property " has been divided into lots and compactly built on with a view to fronting on a street not yet constructed but contemplated by the persons who project it or build with refer-

ence to it, though the municipality has not opened such street or accepted a dedication of it. Secondly, when though still " landed property," that is rural property, in the sense that it has not been divided into lots and has not been compactly built on, it is intersected by opened and constructed streets— opened and constructed by or in conformity with municipal authority—which streets form blocks and upon which blocks there are at least six houses. In the second instance though the residue of the block be unimproved or be not laid out in lots the whole block will be liable to be taxed at the current city rate, as soon as six houses are erected on it.

The property described in the record in this case does not fall within the exception created by the proviso, and is therefore liable to be taxed at current city rates of taxation under that part of *sec. 19* which subjects *all* real estate within the belt to taxation at those rates from and after the year nineteen hundred.

The second question is : Does the city tax rate apply to this property for the year nineteen hundred ? The statute says : "*From and after the year* nineteen hundred" the annexed property shall be liable to the city tax rate. In its grammatical sense the word "from," when referring to a certain point as a *terminus a quo* always excludes that point. Whilst there has been much discussion in the cases as to when and under what circumstances this word is to be treated as a word of exclusion, it would seem to be reasonably clear that when employed, as it is used in this statute, it can only be interpreted as *excluding* the year nineteen hundred. How could a point of time be *within* the *year* nineteen hundred when its *beginning* is fixed as *from* and *after* the *year* nineteen hundred ? No moment of time can be said to be *after* a given year until that year has elapsed and has passed. As the city tax rate is to be imposed *from* and *after* the *year* nineteen hundred, and as no act can be done *after* the *year* nineteen hundred until the *year* nineteen hundred has fully ended ; it must follow that the city tax rate cannot be imposed *during* the year nineteen hundred. In *Bigelow* v. *Willson*, 1 Pick. 485, it was said by

WILDE, J., in speaking of the signification of the word *from*: "So, too, if we consider the question independent of the authorities, it seems to me impossible to raise a doubt.   No moment of time can be said to be after a given day until that day has expired."    14 *Am. & Eng. Ency. Law* (2d ed.), 553.

The views we have expressed lead to the conclusion that the property described in the proceedings is liable to assessment and taxation at the current city rate, but not until after nineteen hundred. As the *pro forma* decree dismissed the bill of complaint altogether and thus denied all the relief sought, though the plaintiff was entitled to have the collection of the taxes for the year nineteen hundred as levied at the city rate, restrained, the decree must be reversed to that extent, but in other respects it will be affirmed.

> *Decree reversed in part and affirmed in part and cause remanded; the costs above and below to be paid by the appellees.*

(Decided June 12th, 1901).

FOWLER, BRISCOE and JONES, JJ., dissent.