# HENRY JOESTING *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Taxation—Constitutional Law—Act of 1888, ch. 98, Annexing Terri-
tory to Baltimore City Upon Certain Conditions Not a Contract—Va-
lidity of Act of 1902, ch. 130, Declaring When Landed Property
in Annexed Territory Shall be Subject to City Rate of Taxation—
Jurisdiction of Equity to Enjoin Collection of Illegal Tax.*

Under the Act of 1888, ch. 98, certain adjacent territory was annexed to
Baltimore City by the vote of the people resident in the annexed
districts. That Act also provided that the then existing county rate of
taxation should remain in force till the year 1900, and that that rate
should not be thereafter increased on landed property within said terri-
tory until avenues or streets shall have been constructed through the
same nor until there shall be upon every block of ground so to be
formed at least six dwellings or store houses. The Act of 1902, ch.
130, defined the terms used in the original Annexation Act by declaring
what should be deemed landed property, and what a block of ground,
and that the opening and construction of streets meant the grading and
paving of the same from kerb to kerb. *Held,* that the Act of 1902 is a
constitutional exercise of power and is not open to the objection that it
impairs the contract formed by the Act of 1888, since this Act was not
a contract but a grant of the sovereign power of taxation to the munici-
pality of Baltimore and could be withdrawn or modified at the pleasure
of the Legislature.

*Held,* further, that even if the Annexation Act was a contract, the city of
Baltimore was not a party to it, and is therefore not entitled to com-
plain that it was impaired by the Act of 1902.

Equity has jurisdiction to enjoin the levy and collection of an illegal tax
by a municipality unless there be some other adequate remedy for the
wrong.

The city of Baltimore levied upon plaintiff's real estate situated in the ter-
ritory annexed to the city under the Act of 1888, ch. 98, a certain rate of
taxation which was in violation of the Act of 1902, ch. 130. Section
170 of the city charter provides that any person aggrieved because of
any assessment for taxation may appeal therefrom to the City Court
which shall ascertain the proper assessment. *Held,* that this section
provides only for appeals from erroneous or illegal assessments for tax-
ation by the Appeal Tax Court and not for an appeal from an illegal
levy by the municipality fixing the rate of taxation or classifying prop-
erty for taxation, and that the plaintiff in this case is entitled to resort
to a Court of equity for relief against the unauthorized levy upon his
property, since no other remedy is provided by statute.

Appeal from the Circuit Court No. 2, of Baltimore City (DOBLER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Isidor Rayner* and *Isaac Lobe Straus* (with whom were *R. B. Tippett*, *Stanley A. Foutz* and *R. E. L. Hall* on the brief), for the appellant.

*Olin Bryan* and *Charles W. Field*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

There are two questions in this case.   The first is this :  Is the Act of Assembly of 1902, ch. 130, constitutional ?   And the second is this : Has a Court of equity jurisdiction to restrain the levying of taxes which if levied would be unlawful ? These two questions will be disposed of in the order in which they have just been stated.

First : By an Act passed at the January session of 1888, and known as chapter 98, provision was made for annexing to the city of Baltimore part of the territory then within the limits of Baltimore county.   By that Act the voters residing in the districts intended to be annexed to the city were given an opportunity to decide by ballot whether those districts should be brought within the city's limits.   The majority of the voters in two of the districts cast their votes in favor of annexation. In the other the majority was against annexation. By sec. 19 of the Act of 1888, it is enacted in substance that until after the year 1900 the property situated in the annexed districts should remain assessed at the valuation fixed by the Baltimore county authorities, and that the owners of that property should only be charged at the rate of sixty cents on the $100, that being the Baltimore county rate which was current when the Act of ·1888 went into effect.   The same section further provided that from and after the year 1900 "the property, real and personal, in the said territory so annexed ; shall be liable to taxation and assessment therefor, in the same manner and form

as similar property within the present limits of the said city may be liable; provided, however, that after the year 1900, the present county rate of taxation shall not be increased for city purposes on any landed property within the said territory, until avenues, streets or alleys shall have been opened and constructed through the same, nor until there shall be upon every block of ground so to be formed, at least six dwellings or store houses ready for occupation."

The validity of this statute was assailed on various grounds but in the case of *Daly* v. *Morgan*, 69 Md. 460, it was fully and finally upheld. In the year 1900 the Appeal Tax Court of the city of Baltimore proceeded to revalue the property in the annexed districts, or the belt as those districts have been called, and the city levied on the owners for the year 1900 the then current city tax rate instead of the sixty cent rate contemplated by the statute. That proceeding provoked litigation. Sundry property holders filed bills in equity seeking by injunction to restrain the enforcement of those levies and the cases were disposed of by this Court in 1901. *Sindall* v. *M. & C. C.*, 93 Md. 535. At the next session of the General Assembly an Act was passed that defined the terms used in the original Act of 1888, ch. 98, and that is the statute which is now attacked as unconstitutional and void. By this last mentioned Act landed property was defined to mean "real estate," whether in fee-simple or leasehold, and whether improved or unimproved; "Until avenues, streets, or alleys shall have been opened and constructed," shall be construed to mean until avenues, streets or alleys shall have been opened, graded, kerbed or otherwise improved from kerb to kerb by pavement, macadam, gravel or other substantial material; the words "avenues," "streets," and "alleys," being herein used interchangeably; "block of ground," shall be construed to mean an area of ground not exceeding two hundred thousand superficial square feet, formed and bounded on all sides by intersecting avenues, streets, or alleys, opened, graded, kerbed and otherwise improved from kerb to kerb by pavement, macadam, gravel or other substantial material as above." Act of 1902, ch. 130.

The Mayor and City Council treating the Act of 1902 as invalid, proceeded to levy against the appellant and others living in the belt and similarly situated, the current city rate for 1903, whereupon the pending bill was filed to restrain the levy and collection of that tax.    The effect of the Act of 1902 is to retain the sixty cent rate in the belt until the landed property there situated becomes urban property, within the meaning of the terms employed in that Act.    The sole ground upon which its validity is questioned is this, that it impairs the obligation of the contract supposed to be involved in the Act of 1888.    If, however, the Act of 1888 is not a contract, the contention of the city must fail, and a like result must follow, even upon the assumption that the Act of 1888 constitutes a contract, if the city was not a party to that contract.

We have no difficulty in holding that the Act of 1888 neither evidences nor contains the constituents of a contract. The purpose of the Act was to enlarge the municipal limits of the city of Baltimore with the consent of a majority of the voters residing within the territory proposed to be annexed. In carrying into effect that purpose provision was made, amongst other details, with respect to the rate of taxation to be levied on the inhabitants brought within the city ; but that provision was merely the exercise by the General Assembly of its undoubted authority over the subject of taxation.    As was said in *Daly* v. *Morgan, supra,* the Act of 1888 created separate taxing districts and fixed within their outlines a definite rate for a prescribed period of years.    It therefore conferred upon the city of Baltimore a power to tax individuals who prior to its passage had not been within the taxing jurisdiction of the Mayor and City Council.    But the grant of that power to the municipality was not the grant of private property, nor the creation of a vested right, much less was it a contract. *Williamson* v. *N. J.,* 130 U. S. 189; *New Orleans* v. *N. O. Waterworks,* 142 U. S. 79, and cases cited in the Court's opinion.    The power to tax conferred by the State upon one of its own municipalities is, in its last analysis, the mere transfer by the State to its own creature of authority to exercise part

of the State's attributes of sovereignty to be used solely for the public good.    When exerted in this way it is the power of the State that acts through the agency of the municipality. *M. C. C.* v. *the State*, &c., 15 Md. 376.    It is a governmental function which the State may grant or withhold and which, when it has been given, may be withdrawn, so far at least as the municipality itself is concerned.    Laying out of view the rights of third parties and dealing with the question solely as one between the municipality and the State which created it, it would be singular and anomalous if the grant by the State to the municipality of a power to tax were beyond the subsequent control of the sovereign, although the very existence of the creature could be terminated at any moment by the same authority that formed it.    If the life or duration of the municipality depends on the will and the pleasure of the State (as it does) and, therefore, is in no sense founded on contract; it is difficult to understand how an attribute of the sovereign exercised through its own agent, can, as between the sovereign and the agent alone, be treated as a contract protected by the organic law against impairment, modification or total repeal.    It must be borne in mind that this controversy is between the individual and the municipality, and that the municipality is insisting that the State, by the Act of 1902, has impaired the obligation of a contract between the State and the city; whilst the individual is complaining because the city refuses to obey the enactment of the State.    The authority given to the city to tax the inhabitants in the belt was a governmental power that was conferred, and like every other similar power conferred upon a municipality, was subject to the control of the General Assembly.    The Maryland cases fully sustain this proposition. *State use Wash. Co.* v. *B. O. R. R. Co.*, 12 G. & J. 437; and other cases referred to in *Thompson's Md. Citations*, 589–590.

The fact that the majority of the voters in two of the districts voted in favor of annexation does not convert the Act of 1888 into a contract.    The assent of the voters was made the condition upon which the Act was to become operative, but

that assent in no way modified or changed the character or the qualities of the statute ; for the reason, that it did not deprive the Legislature of its undoubted control over the municipality, and consequently did not interfere with the authority of the General Assembly to repeal or to amend the original enactment. *Burgess* v. *Pue*, 2 Gill, 19; *Fell* v. *State*, 42 Md. 85; *Jones* v. *State*, 67 Md. 256; *Hamilton* v. *Carroll*, 82 Md. 326.

There is another no less serious difficulty in the path of the city's contention. If it be conceded, for the sake of the argument, that the Act of 1888 was a contract which is within the protection of that provision of the Federal Constitution which forbids the several States from enacting any law that impairs the obligation of a contract, the city of Baltimore is in no position to invoke the aid of the prohibition ; because the city is in no sense a party to the contract. If there be a contract at all it is between the State and the taxpayers, and not between the State and the city. The State made certain provisions in the Act of 1888 and the taxpayers accepted them when they voted to annex the belt to the city. If those provisions could be construed to constitute a contract the city was not a party thereto. It had no participation in their adoption or acceptance and was a stranger to them. Now it is well settled that a person who is not a party to a contract cannot complain that it has been invaded or impaired by State legislation, if the parties to it are satisfied with the disposition which has been made of it ; for whether it has been so impaired or not is a matter with which a stranger to the contract has no concern. *Phinney* v. *Shepherd, &c., Hospital,* 88 Md. 639; s. c., 177 U. S. 170; *Williams* v. *Eggleston,* 170 U. S. 309. So much for the first of the two questions presented on this record.

Secondly: Has a Court of equity jurisdiction to restrain the levy and collection of a tax attempted to be levied and collected illegally? To this interrogatory there can be but one answer and that must be in the affirmative, *Holland* v. *M. C. C.,* 11 Md. 197; *Gill's case,* 31 Md. 395, unless there is some

local legislation affording another adequate remedy. Remedy there must be in some form, for so serious a wrong could not be permitted to go unredressed. Reliance is placed by the Mayor and City Council on sec. 170 of the City Charter. That section provides in part as follows: "Any person or persons, or corporation assessed for real or personal property in the city of Baltimore and claiming to be aggrieved because of any assessment made by the said Court, or because of its failure to reduce or abate any existing assessment, may by petition appeal to the Baltimore City Court, to review the assessment * * * The petition in such appeal, other than the petition of the city, shall set forth that the assessment is illegal, specifying the grounds of the alleged illegality, or is erroneous by reason of overvaluation, or is unequal in that the assessment has been made at a higher proportion of valuation than other real or personal property on the same tax roll, by the same officers, and that the petitioner is, or will be, injured by such illegality, unequal or erroneous assessment. * * * The person or the city appealing to the said Baltimore City Court shall have a trial before the Court without the intervention of a jury, and the Court sitting without a jury shall ascertain or decide on the proper assessment, and shall not reject or set aside the record of the proceedings of the said Judges of the said Appeal Tax Court for any defect or omission in either form or substance, but shall amend or supply all such defects and omissions, and assess, increase or reduce the amount of the assessment, and alter, modify and correct the records of proceedings in all or any of its parts, as the said Baltimore City Court shall deem just and proper, and shall cause the proceedings and decisions on said appeals to be entered in the book containing the record of proceedings of the said Baltimore City Court, certified by the clerk under the seal of the Baltimore City Court, and the book to be transmitted to the Judges of the said Appeal Tax Court, which shall be final and conclusive in every respect, unless an appeal be taken to the Court of Appeals."

It is insisted that under this provision the appellant could,

by a timely appeal to the Baltimore City Court, have obtained full and complete relief and therefore that equity was without jurisdiction to aid him.    We cannot accept that view.    It will be observed that the above cited section of the charter provides only for appeals from erroneous or illegal *assessments*, whereas the relief sought in the pending proceeding is against an unauthorized *levy*.    Assessments are made by the Appeal Tax Court.    Levies are made by ordinances of the Mayor and City Council.    Assessments relate to valuations ; levies consist in the fixing and the imposition of the rate of taxation. With the one the legislative branch of the city government has no connection ; with the second the Tax Department has nothing to do.    From no action of the legislative branch is a direct appeal to the Courts provided.    But it is argued that the Appeal Tax Court must classify the property which is included in the basis of taxation and that from such classification an appeal will lie to the City Court because classification is, if not valuation itself, an essential element of valuation, inasmuch as by classification the rate which particular property will bear is practically determined.    This theory however is not tenable. Classification has no relation to valuation even in those instances where a limited and fixed rate is prescribed for some species of property, such as bonds, etc., but it concerns primarily the rate of the levy.    The assignment of a particular piece of property to a certain class or category is a totally different thing from its valuation for the purposes of taxation.    As respects the last named duty there can be no doubt of the power of the Appeal Tax Court and there can be no question that sec. 170 of the charter gives to a party aggrieved an adequate remedy by appeal to the city Court.    But with regard to the first function—classification—there is nothing said in the section and there is no appeal provided.    In the recent case of *M. & C. C.* v. *Poole & Son Co.,* ante p. 67, this Court speaking by JUDGE PEARCE said : "When, therefore, the Appeal Tax Court may be informed, or have reason to believe, that any property within the territory annexed under the Act of 1888 has been brought within those conditions of the An-

nexation Act which will warrant the imposition of the regular
city rate of taxation, they should give reasonable notice to the
owner of their purpose to impose this rate, fixing a time and
place when he can be heard in relation to the matter.   We
have not been advised, and have not discovered, any specific
provision  of law  prescribing  how, and by what authority,
property in the annexed territory which has been brought
within the conditions of the Act of 1888 warranting the impo-
sition of the city rate of taxation is to be put into that cat-
egory upon the books of the Appeal Tax Court, but it would
seem, in the absence of such specific provision, that the Court
should have power to make such classification.   The correct-
ness  of such classification, however, is a question of fact de-
pendent upon proof as to the opening of avenues, streets, and
alleys through the property, and the erection of the prescribed
number of houses upon a block as provided in the Annexation
Act, and, if no tribunal has been  provided for the determina-
tion of that question, it follows that a relief against such erro-
neous classification can be  had  only through the restraining
power of a Court of equity; and the exercise of that power, in
cases involving the question of the rate of taxation under the
Annexation Act, was sustained in *Sindall's case*, 93 Md. 526,
*Goebel's case*, 93 Md. 749, and *Kuenzel's case*, 93 Md. 750,
where the injunction was denied only because the amount in-
volved was not sufficient to give a Court of equity jurisdiction."
In the absence then of any statutory provision applicable to the
precise situation here presented, the ordinary jurisdiction of
equity to restrain by injunction the enforcement of an *ultra
vires* act must be upheld, or the injured individual would be
without redress.   The bill of complaint describes the property
owned by the appellant with particularity and gives in full de-
tail the physical conditions surrounding it, and thus distinctly
classifies the property for the purposes of the city levy.   This
classification clearly brings the property within the terms of
the Act of 1902 and renders its owner liable to the unt coy
rate of sixty cents.   The demurrer admits the accuracy of the
classification and it follows that the full city rate is not appli-

cable because the of provision of the Act of 1902. We are fully satisfied that a Court of equity has plenary power to interfere by injunction under the averments of the bill filed in this case.

From what has been said it will be seen that we concur in the conclusion reached by the learned Judge below in so far forth as he held the Act of 1888 not to constitute a contract, but that we are constrained to differ from the view he took to the effect that equity was powerless to intervene in such a case as this record presents. The bill of complaint was dismissed in Circuit Court No. 2, for the want of jurisdiction. In this action we are of opinion there was error. Because of that error the decree will be reversed and the cause will be remanded for further proceedings.

*Decree reversed with costs and cause remanded.*

(Decided July 1st, 1903.)