# THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* JACOB S. ROSENTHAL.

*Taxation of Landed Property in Annexed District of Baltimore City.*

Under the Act of 1888, ch. 98, by which certain adjacent territory was annexed to Baltimore City, it was provided that after the year 1900 the then county rate of taxation shall not be increased on any landed prop-

erty within the said territory until streets or alleys shall have been opened and constructed through the same, nor until there shall be upon every block of ground so to be formed at least six houses ready for occupation. The Act of 1902, ch. 30, directed that this reference to streets shall be construed to mean until streets or alleys shall have been opened, graded and otherwise improved from kerb to kerb by pavement or other substantial material. A certain block of ground in the annexed territory was bounded on three sides by regular city streets paved and kerbed and on the fourth side by an alley graded and paved throughout its length with cobble-stones but without kerbs. This alley was graded and paved in the same way as many of the alleys of the city, where no sidewalks are used and where no kerbs are placed because not necessary. *Held*, that this block of ground is bounded by streets and alleys graded and opened within the meaning of the Act of 1902, and the fact that the paving of the alley was in bad condition and it was not kerbed does not prevent it from being considered as a boundary within the requirements of the statute, and consequently that landed property within this block is subject after the year 1900 to the city rate of tax.

Appeal from the Circuit Court of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, SCHMUCKER, JONES and BURKE, JJ.

*Edgar Allan Poe* (with whom was *W. Cabell Bruce* on the brief), for the appellant.

*Isaac Lobe Straus*, for the appellee.

BOYD, J., delivered the opinion of the Court.

This is an appeal from a decree which perpetually enjoined the appellant from levying taxes for municipal purposes against the appellee, as the owner of certain property in the city of Baltimore, at a rate in excess of sixty cents per one hundred dollars of its assessed value, for the year 1903. The property in question is in what is commonly known as "The Belt"—being within the limits of the territory annexed to the city of Baltimore under and by virtue of the Act of 1888, chap. 98. It is in the block bounded on the north by White-lock street, on the south by North avenue, on the east by Eutaw place, and on the west by Madison avenue. There is

an alley called Morris alley running from North avenue to Whitelock street about midway between Eutaw place and Madison avenue. Sec. 19 of the Act of 1888 provided that until the year 1900 the rate of taxation upon all "landed property" and upon all personal property liable to taxation in the territory so annexed to the city should not "exceed the present tax rate of Baltimore County." After making certain provisions about assessments, expenditures of the amount of revenue, etc., that section concluded as follows: "provided, however, that after the year 1900 the present Baltimore County rate of taxation shall not be increased for city purposes on any landed property within the said territory until avenues, streets or alleys shall have been opened and constructed through the same, nor until there shall be upon every block of ground so to be formed at least six (6) dwelling or store-houses ready for occupation." By the Act of 1902, chap. 130, sec. 4A was added to Art. 4 of the Local Code, and by it "Landed Property" was declared to mean "real estate, whether in fee-simple or leasehold, and whether improved or unimproved." It further enacted that the reference to avenues, etc., should be construed to mean "until avenues, streets or alleys shall have been opened, graded, kerbed and otherwise improved from kerb to kerb by pavement, macadam, gravel, or other substantial material; the words 'Avenues,' 'Streets,' and 'Alleys,' being herein used interchangeably," and that "Block of ground should mean" an area of ground not exceeding two hundred thousand superficial square feet, formed and bounded on all sides by intersecting avenues, streets or alleys, opened, graded, kerbed, and otherwise improved from kerb to kerb by pavement, macadam, gravel or other substantial material as above provided."

This entire block between the streets and avenues mentioned above contains 338,826 superficial square feet, and therefore considerably more than the 200,000 feet mentioned in the Act of 1902, but to the east of Morris alley, the area of ground contains only 161,342 square feet, and to the west of that alley there are 145,296 square feet. The important question,

therefore, is whether that alley can be used as a boundary within the meaning of this statute.

It is admitted that the streets and avenues above mentioned are so improved that they comply with all the requirements of the statute, as indeed they were for sometime before the Act of 1902 was passed. Mr. Payne, Chief Assessor of the Appeal Tax Court, testified that on the first day of January, 1901, there were 118 houses on the block bounded by them, and that Morris alley was opened by the city under an ordinance of 1889. It is twenty-five feet wide, and there can be no doubt from the testimony that it was paved with cobble-stones as far back as 1897 and probably earlier. It is paved to the fence line on the east side, and is likewise paved to what Mr. Payne testified he understood to be the west line of the alley, but there is an unpaved space between that west line and the fence line of the lots fronting on Madison avenue. There are two blocks of small houses on the west side and in front of them there are sidewalks about four feet wide—the space referred to above as unpaved being between the sidewalks in front of those houses. Mr. Coonan, a surveyor called by the plaintiff, testified that there was granite kerbing extending back from Whitelock street about seventy or seventy-five feet, another granite kerb about thirty feet in front of some of the small houses on the alley, and about one hundred feet of wooden kerb in front of the houses further down the alley. In the center of the alley there is a gutter for surface drainage. It must be admitted that the paving in the alley is in bad repair, although Mr. Payne said "it would compare with the average twenty or twenty-five foot alley in the city paved with cobble-stones, subject to the ordinary wear and tear of that class of pavement." Mr. Rosenthal, the plaintiff, said: "It is in a condition generally of filth, stable refuse, garbage boxes and in fact all the evidences, the physical evidences, that generally characterize a badly paved alley in a large city." And Mr. Records, who lives on Eutaw place and was called by the plaintiff, also said it was paved with cobble-stones "just as they are ordinarily put down in an ordinary street." He also said it

was as to cleanliness "about in keeping with all other alleys" and he only saw garbage carts, ice wagons, milk wagons "and things of that kind," but no carriages there.

The fact that the paving in the alley is in bad condition would not justify the Court in declaring it not to be embraced within the meaning of this statute.   Nor can the contention that it is not graded be sustained.   It is true Mr. Coonan testified that "there are possibly about four changes in the grade there; it seems as though the alley was just laid right on the surface and possibly from the looks of things, it looks as though it was not paved all at once."   But it is manifest that the grading was sufficient to comply with the requirements of the statute in that respect, and merely because "they didn't make a straight grade all the way through," to use Mr. Coonan's expression, would not be ground for exemption from the city tax rate under this law.   There are doubtless some streets in the heart of the city that might be subject to the same criticism.   We are satisfied that the evidence abundantly shows that the alley was opened, paved and graded within the meaning of this Act, and therefore we only have to determine whether the fact that it is not kerbed throughout is to relieve the appellee and others similarly situated from the payment of taxes at the ordinary city rate.   If it be true that this alley was paved with cobble-stones from its eastern to its western lines, it would be remarkable if the Legislature intended that the mere failure to place kerb-stones, either along the outside limits, or within those limits, should have the effect contended for in this case.   Mr. Payne testified that it was so paved, according to his understanding of the lines of the alley, and we do not understand that to be contradicted.   It may be true that some portions of the ground between the fences are not paved, but there is nothing to show that any part of the alley, as laid out by the city for a public alley, was not originally paved.   The plaintiff himself testified that it "is paved in a sense with rubble-stones, but unkerbed, having no kerb on either side, the paving being directly from the fence line to fence line." There is not a word in the statute requiring sidewalks to be

laid, but the avenues, streets and alleys are to be "opened, graded, kerbed and otherwise *improved from kerb to kerb* by pavement, macadam, gravel or other substantial material," and if it be essential, for the purposes of this statute, that there be kerbs in all avenues, streets and alleys, what is there in the statute to prevent them from being placed ten or fifteen feet apart and simply paving between them? That would comply with the letter of the statute. There are doubtless many alleys in the city of Baltimore, as there are in all cities, which have no sidewalks on them, and the fact that they are paved with cobble-stones from one side to the other does not make them any the less public highways. Whatever be the law on the subject of alleys elsewhere, those that are obtained by dedication or condemnation in the city of Baltimore are public highways, *Van Witsen* v. *Gutman*, 79 Md. 405, Local Code, Art. 4, sec. 832, and of course one conveyed to the city by deed would be, unless there be restrictions in it to the contrary. This alley was paved by the city and undoubtedly some discretion must be allowed the city as to how it should be paved. To hold that all alleys must be kerbed in the way streets usually are—that is to say that there must be sidewalks on them, and kerbs separating them from the driveways—would in many instances destroy the usefulness of alleys. The proof in this case shows that alleys in Baltimore City are from three to thirty feet in width, and it would be impossible to have parts of some of them reserved for sidewalks, and other parts for roadways without materially affecting their usefulness. Some are intended for foot passengers only, others merely for vehicles. When then an alley in this annexed territory is opened, graded and paved from one side to the other, and there is no necessity for kerbing, we cannot admit that it is nevertheless necessary to kerb it in order to use it as a boundary in compliance with the requirements of this statute. Ordinarily it is necessary to kerb a street or avenue when it is to be paved—at least it is usually done—but it is neither necessary nor usual to kerb an alley used for such purposes as this one is. *Streets* are sometimes

paved from building line to building line with vitrified brick, or other material, without any kerb stones, and yet it cannot be possible that the mere absence of kerb-stones was intended to result in exempting property in the territory annexed to Baltimore City from the paying of taxes at the regular rates— simply because there were no kerb-stones, although the street in all other respects was improved as required by the statute. And a *fortiori* it must be so of *alleys* which were opened, graded and paved, but not kerbed.

In some of the cases in this Court affecting the territory annexed to Baltimore City under the Act of 1888, we stated the objects and purposes of the exemption in the statute. In *Daly* v. *Morgan,* 69 Md. 460, which sustained the validity of that Act, JUDGE ROBINSON said: "The larger part of the territory annexed under the Act of 1888 embraces vacant outlying lots and farming lands, and the plainest principles of justice would seem to require a qualified exemption of such property for a limited period at least, from the heavy burden of city taxation. It must be some time before such property can be available for buildings or business purposes, or can enjoy the full benefits and privileges of the city government." In *Sindall* v. *Baltimore,* 93 Md. 533, the present Chief Judge says: "It must be borne in mind that at the date of the adoption of the Annexation Act a large part of the added territory was unimproved, outlying, rural land. It would have been manifestly unjust to have subjected such property to the same valuation and to the same rate of taxation as then obtained in the city with respect to distinctively urban property." We there said that "landed property," as used in the Act, meant rural unimproved land, as distinguished from real estate compactly built on as in a city, and that the full city tax rate could be imposed on the annexed property under two conditions: First, when the 'landed property' has been divided into lots and compactly built on with a view to fronting on a street not yet constructed but contemplated by the persons who project it or build with reference to it, though the municipality has not opened such street or accepted a dedication of it. Secondly,

when though still 'landed property,' that is rural property, in the sense that it has not been divided into lots and has not been compactly built on, it is intersected by open and constructed streets—opened and constructed by or in conformity with municipal authority—which streets form blocks and upon which blocks there are at least six houses.    In the second instance though the residue of the block be unimproved or be not laid out in lots the whole block will be liable to be taxed at the current city rate, as soon as six houses are erected on it."    That decision was rendered in June, 1901, and the Act of 1902 was then passed, which Act was held to be constitutional and valid in the case of *Joesting* v. *Baltimore*, 97 Md. 589.

We see then that the Legislature, by the original Act of annexation, provided that the rate of taxation fixed for the year 1887 in Baltimore County should continue until after the year 1900, for the reason, as interpreted by this Court, that it would have been unjust to impose taxes at the ordinary city rates upon property situated as that in this belt was.    The owners of such property did not have the advantages of urban property, such as water, lights, fire and police protection, etc., and therefore the Legislature wisely and justly postponed the time when the ordinary city rate should be levied.    When that time had arrived, some of the annexed territory was still in a condition that the Legislature deemed entitled to relief by way of partial exemption.    But as was said in Sindall's case; "like every other exemption from taxation it must be strictly construed.    The taxing power is never presumed to be surrendered, and therefore every assertion that it has been relinquished must, to be efficacious, be distinctly supported by a clear and unambiguous legislative enactment.    To doubt is to deny an exemption."    When the Legislature, in determining what properties should be exempt from the city rate, declared that sec. 19 of the Act of 1888 should mean what is stated above, it would be an exceedingly liberal construction to hold that it intended to exempt property, which so far as can be gathered from the record is improved in the same way and

has all the advantages of other city property, merely because an alley, which could otherwise be taken as one of the boundaries under this Act, is not kerbed—although it was opened, graded and paved throughout.    There could be no possible reason for making the exemption dependent upon kerbing alone.    There can be no doubt that under the Act an alley can be taken as a boundary, in determining the question as to whether the number of superficial square feet in the block exceeds two hundred thousand.    Some alleys may be kerbed, and others not.    Morris alley is one where this seems to have been thought unnecessary by the municipal authorities, and if its uses are correctly stated by the witnesses produced by the appellee—for drainage, ice wagons, milk wagons, garbage carts, etc.—there could be no possible necessity for the city to kerb it.    As we have seen, it is a public highway and the public has the right to use it for the purposes for which it was intended, but the public could not expect an alley situated as this one to be kept in all respects in the same condition as a street.    The intention of the Legislature was to exempt property in this territory from the city rate of taxation until it was improved as city property is ordinarily improved.    When the Act spoke of "opened, graded, kerbed," etc., and declared that the words "avenues," "streets," and "alleys" were used interchangeably, it did not necessarily mean to exclude all alleys which were not kerbed, especially such as were never intended to be kerbed, and it would be adding a new ground for exemption to hold that only such a one as is kerbed can be used as a boundary in determining the area of ground in a block. This Court having in effect said in Sindall's case that under the Act of 1888 it was not necessary that the beds of the avenues, streets or alleys be improved in order to make the houses and lots fronting thereon liable to the city rate of taxation, the Act of 1902 was intended to so amend the statute as to require the avenue, street or alley to be improved as mentioned in the Act, but as what we may call improved alleys in contradistinction to those not graded and paved are frequently, if not usually, not kerbed, the Legislature could not have in-

tended that they must in all cases be kerbed.   It is a matter of common knowledge that some alleys in the city of Baltimore are kerbed, while others are not—although regularly opened by the municipal authorities and graded and paved. The description given by the witnesses of this block, between the four streets named, shows that it does not differ from other blocks in the original limits of the city.   Morris alley is said to be like other city alleys, and we are of the opinion that it does sufficiently comply with the terms of the Act of 1902 to make the properties between it and Eutaw place, and between it and Madison avenue, from North avenue to Whitelock street, subject to the ordinary city rate of taxation.

There is much force in the contention of the city that the Act of 1902 was not intended to apply to property situated and improved as this was when the Act was passed.   The improvements to the streets and Morris alley had then been made, and it is scarcely possible that the Legislature could have intended to exempt property which was in most, if not all, respects already improved just as many of the blocks within the old limits of the city were.   But as it is not necessary now to determine that question, and we prefer to rest our decision on what we have said above, we will not further discuss it.

The decree of the lower Court will be reversed, and the bill dismissed.

> *Decree reversed and bill dismissed, the*
> *appellee to pay the costs.*

Decided December 6th, 1905.