# MAYOR AND CITY COUNCIL OF BALTIMORE vs. GEORGE W. GAIL, JR., ET. AL.

*Taxation of landed property in the territory annexed to Baltimore City—Injunction against erroneous classification of property by Appeal Tax Court.*

Under the Act of 1888, ch. 98, by which a certain part of Baltimore County was annexed to Baltimore City, it was provided that the then county rate of taxation should not be increased for city purposes on any landed property in that territory until streets shall have been opened through the same, nor until there shall be upon every block so to be formed at least six dwelling or store houses. The Act of 1902, ch. 130, provided that the word "street" as used in the former Act shall be construed to mean streets fully graded and paved, and that block of ground shall be construed to mean an area not exceeding 200,000 square feet bounded on all sides by graded and paved streets. *Held,* that a lot of ground owned by the plaintiff containing less than said number of square feet, bounded on all four sides by paved and graded streets, and situated in the midst of a residential part of the city, is subject to the city rate of taxation, although it does not have upon it six dwelling or store houses.

*Held,* further, that another unimproved lot of ground owned by the plaintiff bounded on one side only by a city street and on the other sides by land owned by other parties is not subject to the city rate of taxation.

Equity has jurisdiction to enjoin the Appeal Tax Court of Baltimore City from classifying property in the territory annexed to said city as taxable at the city rate, under the Act of 1902, chap. 130, and from collecting such tax, when in fact such property has not been so improved as to be liable to the city rate of taxation under the provisions of the statute.

*Decided December 4th, 1907.*

Appeal from the Circuit Court of Baltimore City (ELLIOTT J.)

The cause was argued before BRISCOE, BOYD, SCHMUCKER and BURKE, JJ.

*Edgar Allan Poe,* Deputy City Solicitor (with whom was *W. Cabell Bruce,* City Solicitor on the brief,) for the appellant.

*W. Burns Trundle,* for the appellees.

BURKE J., delivered the opinion of the Court.

The appellees, as trustees under the will of George W. Gail, deceased, are the owners of two lots of ground situated within the territory annexed to Baltimore City under the Act of 1888, chapter 98. These lots will be designated in this opinion as Lot No. 1 and Lot No. 2. Lot No. 1 fronts about 600 feet on Eutaw place; 300 feet on Whitelock street; about 600 feet on Linden avenue, and 300 feet on Ducatel street. It is improved by two dwellings; a stable and carriage house combined; a green house for the culture of flowers, and a chicken house for raising chickens. The lot is not divided by either streets or alleys opened, or unopened, and about one-third of the lot is used as a vegetable garden, and a large part of the remainder is set out in shade and fruit trees and shrubbery. This property was the residence of the late Mr. Gail, and is in precisely the same condition now as it was at the time of the adoption of the annexation act, except that a conservatory has since been added. The streets surrounding this property are public highways of the city, paved, graded and curbed, except Linden avenue which is not entirely paved between Ducatel street and Whitelock street. It is located in a residential section, and the whole neighborhood immediately surrounding it is well built up and well improved. The property has the advantage of lighted streets at the expense of the city, and of police and fire protection, and is supplied with water furnished by the city, which must, however, be paid for by those who use it.

Lot No. 2 fronts on Eutaw place, and is wholly unimproved. It runs back from Eutaw place to Jordan alley. It has no street or alley bounding it on its south-eastern side, and on its north-west side it is contiguous to a large parcel of land, called Cloverdale, containing about 28 acres, and there is no physical boundary separating the two properties. Lot No. 2 is in the same condition now as it was when the Act of 1888 became operative.

Down to, and including, the year 1906, both lots have been taxed for municipal purposes at the sixty-cent rate.   But the Appeal Tax Court of Baltimore City, after due notice to the owners, listed, or classified the property at the full city rate for the year 1907.   They determined that under section 19 of the Act of 1888, ch. 98, as amended by the Act of 1902, ch. 130, both lots were subject to the full city rate of taxation, and thereupon the Mayor and City Council of Baltimore levied taxes for municipal purposes upon these lots for the year 1907 at the rate of one dollar and ninety-seven and a half cents on each one hundred dollars of the assessed value thereof—that being the full city rate for that year.   The bill in this case was then filed, and the relief prayed for was two-fold; first, for a mandatory injunction directing the defendant to vacate said tax rolls to the extent that said property is taxed thereon for municipal purposes for the year 1907 at a greater rate than sixty cents on the one hundred dollars of its assessed value; second, for an injunction enjoining and restaining the defendant from collecting or attempting to collect taxes for municipal purposes for the year 1907 on said lots at a greater rate than sixty cents on the one hundred dollars on the assessed value thereof.   The lower Court, after hearing, passed a decree enjoining and directing the defendants to vacate upon its tax rolls the taxes levied upon the two parcels of land, for municipal purposes for the year 1907, in excess of the rate of sixty cents upon the one hundred dollars of the assessed value thereof; and enjoining and strictly prohibiting the defendant, its officers, agents and attorneys from collecting, or attempting to collect taxes thereon for municipal purposes for the year 1907 at a greater rate than sixty cents on the one hundred dollars of their assessed value.   From this decree the city has appealed.

The Acts above mentioned have been considered by this Court in a number of cases, but in none of them has the Court evinced the slightest purpose to weaken the force, or narrow the scope of their provisions.   In all cases to which they are applicable both the city and the taxpayers of the annex will be

held to a compliance with their requirements. The Act of
1888, ch. 98, as amended by the Act of 1902, ch. 130, pre-
scribes the conditions under which the full city rate may be
imposed, and it can only be imposed upon the conditions
therein expressed. . It would be not only a hardship upon the
taxpayer of the annex to impose that rate upon other and dif-
ferent conditions, but to do so would be an unwarranted exer-
cise of the taxing power by the city.

Section 19 of the Act of 1888, ch. 98, declares: "That from
and after the year 1900, the property, real and personal, in the
territory so annexed, shall be liable to taxation therefor, in the
same manner and form as similar property within the present
limits of said city may be liable." The word *similar*, as used
in this clause of the section, does not refer to property im-
proved in any particular way, or located in any particular
locality in the city. It has reference to real and personal
property within the then limits of the city, and had there been
no proviso added to this section the clause quoted would have
indicated clearly the intention of the Legislature to be that
after the year 1900 all property in the annex, real and per-
sonal, should be liable to taxation at the full city rate in the
same manner and form as other real and personal property in
the city. As a great part of the land annexed was vacant,
unimproved, rural property, it would have been unjust to have
subjected it to the payment of the full city rate, and accord-
ingly the following proviso was incorporated in section 19:
"Provided, however, that after the year 1900 the present Bal-
timore County rate of taxation shall not be increased for city
purposes on any landed property within the said territory until
avenues, streets or alleys shall have been opened and con-
structed through the same, nor until there shall be upon every
block of ground so to be formed at least six (6) dwellings, or
store houses ready for occupation."

The validity of this partial exemption was sustained by this
Court in *Daly* v. *Morgan*, 69 Md. 460, in which the object of
this proviso, as well as the kind of property to which it ap-
plied, were stated by JUDGE ROBINSON: "The larger part of

the territory annexed under the Act of 1888, embraces vacant outlying lots and farming lands, and the plainest principles of justice would seem to require a qualified exemption of such property for a limited period at least, from the heavy burden of city taxation. It must be some time before such property can be available for building or business purposes, or can enjoy the full benefits and privileges of the city government. And if local taxation is founded on, or in any manner qualified by, the principles of local benefits, there ought to be in all fairness some apportionment in the rate of taxation between such property, and property more advantageously located."

What was the meaning of *landed property*, as that term was employed in the Act of 1888, and what were the exact conditions under which the full city rate might be imposed were more certainly defined and specifically stated in the case of *Sindall* v. *Baltimore City*, 93 Md. 526. "It must be borne in mind," said the Court, speaking through its late Chief Justice, "that at the date of the adoption of the annexation Act a large part of the added territory was unimproved, outlying, rural land. It would have been manifestly unjust to have subjected such property to the same valuation and to the same rate of taxation as then obtained in the city with respect to distinctively urban property. Accordingly, the nineteenth section specifically provided that "*until* the year 1900 the rate of taxation for city purposes upon all *landed* property" within the annexed territory and "upon all personal property" in the same territory, shall at no time exceed the present rate of Baltimore County." Thus both "landed" and personal property were made liable to the county rate of sixty cents on the one hundred dollars until the year 1900. But the section proceeds: "From and after *the year* nineteen hundred the *property, real and personal*" in the annexed territory "shall be liable to taxation and assessment therefor *in the same manner and form as similar* property within the present limits of said city may be liable."

Here are two definite things declared. First, that until 1900 the *landed* and personal property shall be assessed and taxed

at the county rate existing when the Act of 1888 went into effect. Secondly, that from and after the year 1900 "the property, *real* and personal" shall be assessed in the same manner and form and shall be liable to taxation in the same manner and form as *similar* property within the city's old limits might be liable. Now, if there had been no proviso it is perfectly clear that *all* property, real and personal, whether unimproved land, "landed property," or land laid out in lots and improved with dwellings or places of business—would have been liable "from and after the year 1900" to precisely the same rate of taxation as unimproved land, or lots with houses or business places thereon within the old limits, were liable. To make that result certain beyond cavil the term "landed property" used in the beginning of the section, was dropped when the Legislature came to describe what kind of property was to be subjected to taxation at current city rates from and after the year 1900, and the phrase "property, real and personal" were substituted. But it was no doubt considered probable that there might be considerable "landed property" still unimproved even after the year 1900; and to meet that contingency the proviso was added. By the terms of that proviso the antecedent broad provision, subjecting after the year 1900 *all* property in the Belt; "real and personal" to the same rate of taxation to which similar property in the city might be liable, was suspended as to "landed property not comprised in blocks included within avenues, streets or alleys and not improved by at least six houses. Thus it is obvious that whilst the body of the section subjected *all* real estate within the belt to current city rate from and after the year 1900, the proviso created an exemption from that imposition in favor of *landed* property which could not be strictly classed as city property because not built upon and not situated within a block formed by city streets or avenues." After thus defining the term *landed property*, as used in the Act, he states the two conditions under which the full city rate might be imposed upon annexed property. "First, when the 'landed property' has been divided into lots and compactly built on with a view to fronting on a street not

yet constructed but contemplated by the persons who projected or built with reference to it, though the municipality has not opened such street or accepted a dedication of it.   Secondly, when though still 'landed property,' that is rural property, in the sense it has not been divided into lots and has not been compactly built on, it is intersected by opened and constructed streets—opened and constructed by or in conformity with municipal authority —which streets form blocks and upon which blocks there are at least six houses.   In the second instance though the residue of the block be unimproved or be not laid out in lots the whole block will be liable to be taxed at the current city rate, as soon as six houses are erected on it."

The *Sindall case* was decided in June, 1901, and in April, 1902, the Foutz Act was passed, by which the terms used in the Act of 1888 were defined and other and different conditions prescribed as conditions precedent to the taxation of landed property in the annex at the full city rate.   The Act provides: First, that the terms "landed property," "until avenues," streets or alleys shall have been opened and constructed, and "block of ground" as used in the preceding section shall be construed as follows: (*a*) "Landed property" shall be construed to mean real estate, whether in fee simple or leasehold, and whether improved or unimproved; (*b*) "until avenues," streets or alleys shall have been opened and constructed, shall be construed to mean until avenues, streets or alleys shall have been opened, graded, curbed and otherwise improved from curb to curb by pavement, macadam, gravel or other substantial material; (*c*) the words "avenues," "streets" and "alleys" being herein used interchangeably; secondly, "block of ground" shall be construed to mean an area of ground not exceeding two hundred thousand superfical square feet, formed and bounded on all sides by intersecting avenues, streets or alleys, opened, graded, curbed or otherwise improved from curb to curb by pavement, macadam, gravel or other substantial material as above provided."

We said in *Joesting* v. *Baltimore*, 97 Md. 592, that the effect of this Act "is to retain the sixty cent rate in the Belt until

landed property there situated becomes urban property, within the meaning of the terms employed in that Act." JUDGE BOYD, speaking of this Act in *Baltimore* v. *Rosenthal,* 102 Md. 306, said: "This Court having in effect said in Sindall's case that under the Act of 1888 it was not necessary that the beds of the avenues, streets or alleys be improved in order to make the houses and lots fronting thereon liable to the city rate of taxation, the Act of 1902 was intended to so amend the statute as to require the avenue, street or alley to be improved as mentioned in the Act.

The relief prayed for in this bill is asked upon two grounds. First, want of power in the Appeal Tax Court of Baltimore City to classify the property; secondly, want of power in the defendant, the Mayor and City Council of Baltimore, to levy the full city rate for the year 1907 upon the property.   This Court in *Sams et al* v. *Fisher et al,* ante p.   155, decided May 15th, 1907, distinctly held that the Appeal Tax Court of Baltimore City has the power, under the provisions of the Acts of 1888 and 1902, to take property situated in the annex, *and which has become subject to taxation at the full city rate,* out of the list of property subject to the sixty cent rate, and to list, or classify it at the full city rate.   In that case it was not claimed that the property in question was not subject to taxation at the full city rate under the Act of 1902.   But, if this property is *landed* property, within the meaning of the Act of 1902, it follows from what we have already said that it is not liable to the full city rate, because the conditions prescribed by that Act do not exist, and, therefore, the defendant had no power to impose that rate.

But in our opinion, neither the Act of 1888, nor the Act of 1902 applies to Lot No. 1.   This lot is not landed property within the meaning of either of those Acts.   It is in the fullest sense urban property, situated in a highly improved and desirable residential section of the city, and enjoys all the advantages and privileges of highly favored city property. There is no reason why such property should be exempt from the full city tax rate, and it certainly was not within the contem-

plation of the Legislature that such property should enjoy the partial exemption conferred by the Act.   The question arising upon the taxation of Lot No. 1 is controlled and settled by the principle of the decision in the  case  of *Baltimore City* v. *Hiss*, 103 Md, 620.

Under the decisions of this Court in *Daly* v. *Morgan* and *Sindall* v. *Baltimore, supra,* Lot No. 2 would be held to be landed property, but that this lot, under the Act of 1902, is landed property does not appear to admit of a doubt, and, therefore, it cannot be taxed at the full city rate until the conditions prescribed by that Act have been gratified.

2. Having  determined that the levy  of the full  city rate upon Lot No. 2 was beyond the power of the defendant, its act was, therefore, *ultra vires* and void.   The only question remaining is:   Has a Court of equity jurisdiction  to restrain the collection of a tax attempted to be levied and  collected illegally?   By the unbroken current of judicial decisions in this State and  elsewhere this general jurisdiction has been sustained.   It was sustained by this Court in *Joesting* v. *Baltimore,* 97 Md. 589, in an able opinion delivered by CHIEF JUSTICE McSHERRY, in which the reasons in support of that jurisdiction are stated with convincing force.   But it is supposed that this Court in *Sams* v. *Fisher, supra* has  changed the settled law declared in *Joesting* v. *Baltimore.*   This is an entire misapprehension.   The only question before the  Court in *Sams* v. *Fisher,* was the power of the Appeal  Tax Court of Baltimore city to classify annexed property.   The jurisdiction of a Court of Equity to restrain the levy and the collection of a void, or illegal tax was not involved in that case.   We, therefore, decide that Lot No. 1 is subject to the imposition of the full city rate for the year 1907, and Lot No. 2 is subject only for the year 1907 to the limited sixty cent rate.   The decree will be reversed in part, and affirmed in part, and the cause remanded that a new decree may be passed in conformity to this opinion.

> *Decree reversed in part and affirmed in part, and caused remanded, that a new decree may be passed in conformity to this opinion, each party to pay one-half of the costs in this Court.*