# THE UNITED RAILWAYS AND ELECTRIC COMPANY OF BALTIMORE *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Taxation of Tracks of Street Railway Company Within the Territory Annexed to Baltimore City Under the Act of 1888, ch. 98.*

The Act of 1888, ch. 98, by which certain territory then comprised within the limits of Baltimore County was annexed to Baltimore City, enacted that until the year 1900 the rate of taxation on all property within the annexed district should not exceed the then existing tax rate of the county, and that from and after the year 1900 the property within said territory should be liable to taxation in the same manner as similar property within the city limits. But it was also provided that the county rate of taxation shall not be increased on any landed property within said territory until streets shall have been opened and constructed through the same, nor until there shall be upon every block of ground so to be formed at least six dwellings or stores ready for occupation. An electric railway company was assessed for taxation upon its tracks in the annexed territory at the city rate. About fifteen miles of these tracks ran through land where no streets were constructed by the city, nor were there ready for occupation, six houses upon each block through which said fifteen miles of track extended. The railway company claimed an exemption from taxation at the city rate under the proviso of the Annexation Act. *Held*.

1st. That said railway tracks are not exempt from city taxation as being landed property through which no streets have been constructed, etc. because the exemption contained in the proviso contemplated only property through which streets may be constructed, out of which city blocks can be formed, and upon which houses can be erected.

2nd. That it is immaterial that the real estate immediately contiguous to these fifteen miles of track is taxed at the county rate, because under the statute any exemption from the city tax rate depends upon the condition of the particular property itself and not upon the condition of the adjoining property.

3rd. That since the city rate of taxation could be imposed upon property in the annexed district only after the year 1900, and the railway company had paid that rate for the year 1900 under protest, it is entitled to be repaid the excess over the county rate of taxation.

Appeal from a *pro forma* order of the Baltimore City Court.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and JONES, JJ.

*Geo. Dobbin Penniman* (with whom was *Fielder C. Slingluff* on the brief), for the appellant.

*Wm. Pinkney Whyte* and *Chas. W. Field,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from a *pro forma* order or judgment of the Baltimore City Court dismissing an appeal filed under section 170 of the New Charter of Baltimore by the United Railways and Electric Company of Baltimore from a ruling made by the Appeal Tax Court of Baltimore, fixing the rate of taxation for the year 1900 upon the assessed valuation of that part of the appellants right of way and tracks, situated in that part of the city of Baltimore commonly known as the Annex or Belt. The case was tried upon an agreed statement of facts, and the sole question is whether the tax should be at the full city rate of $1.67 in the $100, or at 60 cents in the $100, the latter being the Baltimore County rate at the date of the passage of the Annexation Act; and this depends upon the construction of section 19 of that Act (ch. 98, of 1888), now section 4 of the New Charter. That provides that until the year 1900 the rate of taxation for city purposes upon all *landed* property in the territory annexed by the Act of 1888, and upon which taxes would be paid to Baltimore County if such territory had not been annexed to Baltimore City, should at no time exceed the tax rate of Baltimore County for the year 1887, and that until the year 1900 the assessment of such property should not be increased ; provided that even after the year 1900 said rate of taxation should not be increased for city purposes on any landed property in said territory until avenues, streets or alleys should have been opened and constructed through the same, nor until there should be on every block of ground so to be 'formed, at least six dwellings or storehouses ready for occupation.

The statement of facts may be thus abbreviated :

1st. That the petitioner is a corporation under the laws of Maryland operating an electric railway of which forty-six miles of double track, assessed at $17,000 per mile, are operated in said annex.

2nd. That thirty-one of these forty-six miles run through property through which avenues, streets and alleys have been constructed, and upon which there are, ready for occupation, upon each block so formed, through which the railway tracks extended, six dwellings or storehouses, and that said thirty-one miles are therefore properly taxable at $1.67 per $100, that being the city rate for the year 1900.

3rd. That fifteen of these forty-six miles run through property through which no avenues, streets, or alleys have been constructed, nor are there ready for occupation upon each block through which said tracks extend, six dwellings or store houses; and that the property *immediately contiguous* to said fifteen miles was taxed for the year 1900 by the Appeal Tax Court, at the Baltimore County rate of 60 cents in the $100, at which said rate also, said fifteen miles had been taxed by Baltimore City prior and up to the year 1900.

4th. That the railway company paid to the city of Baltimore for the year 1900 taxes upon said fifteen miles of track assessed at $17,000 per mile, at the full city rate of $1.67 in the $100, aggregating $4,258.50, whereas the rate thereon should have been only 60 cents in the $100, aggregating only $1,530, and that it has thus paid $2,728.50 in excess of the true and legal amount due, which excess should be repaid to it by the comptroller of the city with interest from the date of its payment to the city.

It is stated in the appellant's brief that part of its right of way is over turnpikes on which the right to lay its tracks was purchased from the turnpike companies, part over the beds of public roads or streets under some sufficient authority, and part is held under fee-simple conveyances. None of these things however appear in the agreed statement of facts, but we do not regard them as material to the proper dispositon of the case.

The appellants maintain that the term, "*landed property*," as used in the Annexation Act, and in the new charter, is identical in meaning with the term *real estate,* and that its right of way, however acquired, and held, is *landed property,* or real estate ; and that since the proviso of the Annexation Act and of the new charter *expressly* declares that the Baltimore County rate of taxation for 1887 shall not be increased for city purposes on any *landed property* within the annexed territory until the conditions heretofore set forth as to avenues, streets, or alleys, and buildings or store houses have been complied with, that it therefore necesarily follows *ex vi termini* that the Baltimore County rate of taxation for the year 1887 is the proper standard of taxation for these fifteen miles of right of way, which by said agreed statement of facts are not brought within the conditions prescribed for the city rate.    In support of this position the appellant relies upon the case of *The Appeal Tax Court* v. *Western Md. R. R.,* 50 Md. 301–2, in which it was held that where a railway has an easement in the way occupied by its road, such easement, whether under or over the public street, is an element of value to the road, and as such should be included in the valuation of the road itself; and in which the Court said : " The rule would seem to be clear that an easement enjoyed in the bed of a public street may be assessed and taxed as real estate." Conceding, for the purpose of argument without deciding (because unnecessary in this case), that the appellant's right of way is real property and should be so assessed and taxed, the conclusion sought to be drawn by the appellant does not necessarily follow ; though if ·it be also conceded that the right of way and tracks in question are embraced within the terms of the proviso, it would be very difficult if not impossible to deny the conclusion. But the vital question to be determined is whether the right of way and tracks are so embraced and the vice of the appellant's argument lies in the assumption of this fact.

This argument encounters at the outset the difficulties interposed by the strict and rigid construction of tax exemptions declared by all legal writers and Courts and so familiar as to

make any extended reference to them inappropriate. But here there is a clear exemption of " landed property," *under certain circumstances*, and it is of this class of cases that JUDGE COOLEY says in his work on *Taxation*, 2 ed., p. 205. '" It is a very just rule that when an exemption is found to exist, it shall not be enlarged by construction ;" and again, on page 204, note 3, " Taxation is an act of sovereignty, to be performed, as far as it conveniently can be, with justice and equality to all. Exemptions, no matter how meritorious, are of grace, and must be strictly construed." In *Appeal Tax Court* v. *Rice*, 50 Md. 312, the Court said, the party asserting the exemption must show that the power to tax *in the particular* case has been clearly relinquished, and that " if this has not been done, the question whether or not the exemption has been granted, must be resolved in favor of the State."

In *Appeal Tax Court* v. *St. Mary's Seminary*, 50 Md. 345, 346, the assessment Act of 1876 exempted from taxation benevolent institutions, so far as used for the benefit of the indigent ; also the grounds actually covered by the buildings so used, and the equipments of such institutions. The question was whether stocks and other investments held by the corporation, the income of which was used for the indigent students were embraced in the exemption, and it was held they were not. The word *institution* was said to be appropriately descriptive of the buildings or establishment where the business of the corporation was carried on, but wholly inappropriate as the designation of the corporation itself; and so also the term *equipment* was held appropriate to cover tangible property used in conducting the business of the institution, but altogether inappropriate as a descriptions of investments, although the income was used in the work of the institution. This case is cited to show that under the fundamental rule governing the construction of exemptions the particular exemption claimed cannot be sustained unless it is shown to be within the spirit as well as the letter of the law. Let us see then, assuming that appellants right of way and tracks are *landed property* and within the letter of the exemption, whether they are also

within its spirit.    We have seen that section 4 of the new charter provides for an absolute exemption, above 60 cents in the $100, of all landed property and personal property within the annex, until the year 1900, but it will be seen upon examination that it also provides that from and after the year 1900, all property, real and personal, within the annex should be liable to assessment and taxation in the same manner and form as similar property elsewhere in the city.    The absolute exemption provided, has run its course with the year 1900, and except as to the particular property brought within the conditions of the proviso, the absolute subjection to the regular city rate of taxation has been brought into operation.    Unless therefore there is something in the proviso which takes this particular property of the railway out of the general language which precedes the proviso, and requires its inclusion with that to be affected by the proviso, the rate of taxation for 1901 must be the regular city rate for that year, and we do not think there is anything in the proviso which can be properly held to have the effect claimed by the appellant.    We think the obvious purpose of the proviso was to extend the exemption, after 1900, to suburban property, either used for agricultural purposes or suffered to lie idle awaiting the appreciation of value which ordinarily keeps pace with the progress of building and city improvements, until a certain standard of development, marked out in the proviso, should be attained, and that only such property as is *itself* capable of such use and development, was designed to be embraced within the continuance of the exemption.    In other words, that it is only landed property *through which* avenues, streets or alleys may be constructed, *out of which* blocks can be formed, and *upon which* houses or stores can be erected, that was in contemplation for continued exemption, and that the language of the proviso is altogether inappropriate as a description of the right of way and tracks of a railway, although it be *landed property*, avenues, streets or alleys may it is true cross a railway, but they cannot be properly said to be opened *through* them, in the sense in which they are opened through property not de-

voted to public use.   When so run across a railway the public has the right of user for public travel, and such streets will serve to define the *lines* of blocks so formed, but no part of the railway's right of way will ever enter into the dimensions of such blocks, and no house or store can ever be erected upon any part of such right of way.   If the property of the railway cannot be taxed above 60 cents in the $100 until an impossible situation shall arise, it can never be taxed beyond that rate, and an exemption which is confessedly declared to be temporary, will be made perpetual, and that by construction. It is evident that the appellant anticipated this view of the question and felt its force, since there is inserted in the agreed statement of facts the fact that the property immediately contiguous to these fifteen miles is taxed at the 60 cent rate, and it is argued that the railway's privilege of exemption must be measured by that of adjoining or abutting property owners ; and upon this theory they would read the proviso as if it said, "until avenues, streets or alleys shall have been opened and constructed through the same, *or through the adjoining or abutting property ;* nor until there shall be on every block so to be formed, *from said property, or from adjoining or abutting property,* at least six dwellings or store houses ready for occupation."   However ingenious and plausible this may appear without reflection, it will not bear examination, and we cannot adopt the contention.   To do so would be to show ourselves astute to extend by construction an exemption beyond the terms in which it is given.   The Legislature has made this right to exemption depend upon the condition of the *same property* for which it is claimed, and not upon the condition of contiguous property.   If the latter had been intended we are bound to hold the intention would have been declared in clear and plain language, and not left to forced or strained construction.   Moreover, the reasons which obviously induced the exemption as to contiguous property forbid its extension to railway property.   The value of the contiguous property depends in large measure upon the construction of streets affording access to it and the number of the houses on the block in

which it is located; but these are comparatively small considerations to the railway whose revenue depends only remotely upon the condition of any particular blocks along its line, but largely upon the condition, in this respect, of its *termini* and of the principal centres of population along its line. It is of course true that as population becomes more dense along its entire line, a suburban railway will carry more passengers and receive a larger revenue, just as a city street car line proper, though confined to the city limits, will carry more passengers and earn more money as population increases beyond its line. But such considerations are not those upon which this case must be decided, and for the reasons we have stated we think the appellant is not entitled to the *general* exemption claimed. But by the express terms of the charter it is only *from and after* the year 1900 that property within the annexed territory is liable to the city rate of taxation, and the taxes which are here sought to be recovered from the city, were assessed *for the year 1900* at the city rate, and were paid for that year. The basis of taxation was therefore illegal—and the difference between the city rate for the year 1900, and the county rate for 1887 was wrongfully exacted, and having been paid under protest should be refunded by the city.

The order and judgment of the City Court will therefore be reversed and the cause be remanded to the end that an order may be passed directing and requiring the Comptroller of the city of Baltimore to repay to the petitioner the sum of $2,728.50 with interest thereon from the date of its payment by the petitioner, that being the difference between the amount paid and that which should have been paid.

> *Order reversed and cause remanded that an order may be passed in conformity with this opinion. Costs above and below to be paid by the appellees.*

(Decided June 14th, 1901.)