## LEON LAUER *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

*Assessments for Benefits Upon Opening Streets in Annex to Baltimore City.*

The Act of 1904, Ch. 274, provided for the appointment of a commission to condemn, open, grade and pave streets in certain territory annexed to Baltimore City, and conferred upon this "Annex Improvement Commission" designated powers. The Act further provided that the Mayor and City Council might grant to the Commission such additional powers as may be deemed necessary, and also that in lieu of said Commission the Mayor and City Council may by ordinance authorize the Commissioners for Opening Streets to perform the duties of the said Commission. An Ordinance of the City empowered and directed the Commissioners for Opening Streets to perform the duties in said Act provided for the Annex Improvement Commission, and prescribed that in so doing their procedure should be the same as in relation to their ordinary duties of the same nature. *Held,* that, although the Act does not authorize the Annex Commission to make assessments for benefits in opening streets, it does not prohibit such assessments, and that under the ordinance of the City vesting the functions of the Commission in the Commissioners for Opening Streets, the latter are authorized to make assessments for benefits in opening streets in the Annex in the same manner as is provided in the case of street openings in other parts of the city.

*Decided March 24th, 1909.*

Appeal from Baltimore City Court (SAMS, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and HENRY, JJ.

*Leon E. Greenbaum,* for the appellant.

*Joseph S. Goldsmith* and *W. H. De C. Wright, Assistant City Solicitors* (with whom was *Edgar Allan Poe, City Solicitor,* on the brief), for the appellees.

· THOMAS, J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court overruling a motion to quash the proceedings of the Commissioners for Opening Streets for opening Bentalou street from North avenue to Lafayette avenue, in Baltimore City, in so far as they relate to the assessment of benefits on property owned by the appellant, Leon Lauer.

The street proposed to be opened and the property of the appellant is in what is called the "Annex portion of Baltimore City," and the ground of the motion to quash is that the Commissioners for Opening Streets, acting under the authority vested in them by the Act of 1904, Ch. 274, and the ordinances passed in pursuance of that Act, have no power to assess benefits on property in that portion of the city.

The right to assess property in particular localities to the extent that it is deemed specially benefited by local improvements is to be referred to the power of taxation and has been recognized and sanctioned in all the States. The theory on which such assessments are made is that "those whose property is thus enhanced, and who thus receive peculiar benefits from the improvement, should contribute specially to defray its cost." 1 *Lewis, Eminent Domain,* sec. 5 (2nd ed.); *Gould* v. *Mayor, etc., of Baltimore,* 59 Md. 378; *Hagerstown* v. *Startzman,* 93 Md. 609.

The power to make such assessments has been expressly granted to the Mayor and City Council of Baltimore, and has

been exercised by it for a long time. *Alexander* v. *M. & C. C. of Balt.,* 5 Gill, 383. By its new Charter, sec. 6, the City is authorized "To provide for laying out, opening, extending, widening, straightening or closing up, in whole or in part, any street, square, lane or alley within the bounds of said city, which in its opinion the public welfare or convenience may require. To provide for ascertaining whether any and what amount in value of damage will be caused thereby, and what amount of benefit will thereby accrue to the owner or possessor of any ground or improvements within or adjacent to said city, for which said owner or possessor ought to be compensated, or ought to pay a compensation, and to provide for assessing or levying, either generally on the whole assessable property of said city, or specially on the property of persons benefited, the whole or any part of the damages and expenses which it shall ascertain will be incurred in locating, opening, extending, widening, straightening or closing up the whole or any part of any street, square, lane or alley in said city."

The Act of 1904, Ch. 274, under which, and the ordinances passed in pursuance thereof, the Commissioners for Opening Streets acted in proceeding to open Bentalou street, provides, by sec. 1, for the issuing of $2,000,000 of stock by the Mayor and City Council of Baltimore, and that the proceeds of the sale of said stock "shall be used only for the purpose of providing the costs and expenses of condemning, opening, grading, paving and curbing the streets, avenues, lanes and alleys of the Annex portion of Baltimore City," and by sec. 2, for a special commission, "to be known as the Annex Improvement Commission."

Sections 3, 5, 6, 7, 9 and 10 of said Act are as follows:

"Sec. 3. That said commission shall have the right and power to condemn, lay out, open, extend, widen, straighten, close, grade and pave any street, avenue, lane or alley, or any part thereof, from curb to curb; and to establish and fix the building line and the width of the sidewalks on any street, avenue, lane or alley now existing or to be laid out, opened,

extended, widened, straightened, graded or paved in the Annex portion of the City of Baltimore. That said commission shall have all powers necessary and proper in the exercise of said powers; and the Mayor and City Council of Baltimore are hereby authorized and empowered to grant by ordinance any further powers and duties it shall deem necessary for the proper execution of the improvements intended to be made by this Act.

"Sec. 5. That the said commission hereby created shall be the agent of the Mayor and City Council of Baltimore to acquire by gift, purchase, lease, whatever the duration of the lease, or by other methods of acquisition, or by condemnation, any private property whatsoever, including streets, avenues, lanes and alleys, rights or interests, franchises, privileges or easement, that may be required to open, widen, extend, straighten, close, grade or pave any street, avenue, lane or alley, or to broaden any sidewalk; and as soon as the title to the property acquired as set forth herein has been certified by the City Solicitor, said commission shall have the same conveyed to the Mayor and City Council of Baltimore, and no ordinance shall be requisite to the validity of such conveyance; said streets, avenues, lanes and alleys so conveyed shall become public highways, subject to all ordinances and resolutions relating to streets, avenues, lanes and alleys in the City of Baltimore. That authority is hereby conferred upon the Mayor and City Council of Baltimore to provide by ordinance or ordinances the proceedings for condemnation of property as herein set forth by the said commission.

"Sec. 6. That no money shall be expended by said commission to pay for the improvement of sidewalks in the said Annex, but same shall be done at the expense of the owner or owners of property along and upon the streets, avenues, or lanes said sidewalks are to be placed; authority is hereby given said commission to assess said property for the cost and expenses of said sidewalks, and to collect the same as now prescribed by law or ordinances.

"Sec. 7. That said commission is hereby authorized and empowered to contract with any person, persons, company or corporation for the work of opening, grading, curbing and paving the streets, avenues, lanes and alleys of the Annex as intended by this Act, or to employ the necessary laborers, help and assistants, skilled and unskilled, and perform the work under their own supervision. The costs and expenses of said work and all necessary expense of this commission to be paid out of the loan as provided in section 1 of this Act, upon vouchers, approved by the said commission or its chairman, and presented to the Comptroller and City Register of the City of Baltimore.

"Sec. 9. That the said commission is hereby authorized as its work progresses to turn over from time to time such completed portions of said work as it may see fit to the charge, superintendence and control of the proper city officials, and shall on the termination of its work turn over all the records. writings, maps; reports to the Commissioner for Opening Streets, to be by him preserved and to be used as the papers and records of his office.

"Sec. 10. That, provided, however, in lieu of said commission hereinbefore provided for in section 2 of this Act, the Mayor and City Council may by ordinance authorize and empower the Commissioners for Opening Streets of Baltimore City to perform the duties and functions in this bill heretofore provided for the said commission."

By section 3 the commission is not only given "all powers necessary and proper in the exercise of" the powers expressly conferred, but the Mayor and City Council are "authorized and empowered to grant by ordinance any further powers and duties it shall deem necessary for the proper execution of the improvements intended to be made by this Act;" and by section 5 "to provide by ordinance or ordinances the proceedings for condemnation of property as herein set forth by said commission." In execution of this power conferred by the Act on the Mayor and City Council, it passed, March 6th, 1905, Ordinance No. 216, by which the Commissioners for Opening

Streets are "authorized, empowered and directed . * * * to perform the duties and functions in said Act provided for the Annex Improvement Commission," and it is provided by sec. 7 "that in condemning, laying out, opening, extending, widening, straightening or closing streets, avenues, lanes, alleys or parts thereof, under said Act, the procedure of the said Commissioners for Opening Streets, except in so far as they shall be authorized by the terms of said Act to acquire property, rights or interests, franchises, privileges or easements through voluntary action of the citizen, shall be that now or hereafter prescribed by law in relation to their ordinary duties and powers of the same nature."

Now the procedure of the Commissioners for Opening Streets in opening streets required by ordinance to be opened, is prescribed by sections 172 to 195 of the City Charter (Act of 1898, Ch. 123), and section 175 provides that "Whenever the Mayor and City Council of Baltimore shall hereafter by · ordinance direct the Commissioners for Opening Streets to lay out, open, extend, widen, straighten or close up, in whole or in part, any street, square, lane or alley, within the bounds of this city, the said Commissioners having given the notice required by law of their first meeting to execute the same, shall meet at the time and place mentioned in said notice, and from time to time thereafter, as may be necessary, to exercise the powers and perform the duties required of them by said ordinance, and shall ascertain whether any and what amount of value in damage will thereby be caused to the owner of any right or interest in any ground or improvements within or adjacent to the City of Baltimore for which, taking into consideration all advantages and disadvantages, such owner ought to be compensated; and the said commissioners having ascertained the whole amount of damages for which compensation ought to be awarded, as aforesaid, and having added thereto an estimate of the probable amount of expenses which will be incurred by them in the performance of the duties required of them, as aforesaid; and also of the expenses incurred by the City Register by reason of said proceedings,

shall proceed to assess all the ground and improvements within and, adjacent to the city, the owners of which, as such, the said commissioners shall decide and deem to be directly benefited by accomplishing the object authorized in the ordinance aforesaid;" etc.

As the sections of the charter referred to contain the only procedure prescribed by law, it is evident that the procedure referred to in Ordinance No. 216 is that prescribed by said sections, and that the Commissioners for Opening Streets in opening streets in the Annex portion of the city are required by the ordinance, after "having ascertained the whole amount of damage for which compensation ought to be awarded," etc., to "*proceed*," as directed by sec. 175 of the charter, to assess benefits on all property deemed and decided by them to be directly benefited thereby. That this is the proper construction of the ordinance would seem to admit of little doubt. The procedure adopted is that prescribed by law "in relation to their ordinary duties and powers of the same nature." These "ordinary duties and powers of the same nature" are their duties and powers in opening streets directed by ordinance to be opened, and it is the procedure prescribed by the charter in relation to them that they are required by the ordinance to follow when opening streets under the Act of 1904. The ordinance could not have been more explicit if it had set out in terms the procedure to be followed by the commissioners. Instead of directing them, after ascertaining the damages, etc., to assess the benefits, etc., it requires them in clear, definite and appropriate terms, in opening streets under the Act of 1904, to do the things they are required to do by the charter when opening streets directed by ordinance to be opened. If this is not the proper construction of the ordinance, what are the duties and powers of the commissioners in opening streets under said Act? The Act simply authorizes them to open streets; it does not provide what they shall do or how they shall proceed in order to accomplish that object. If they are not required to proceed according to the provisions of the charter, how are they to proceed?

: .The learned counsel for the appellant contends that the Mayor and City Council could not by ordinance enlarge or modify the powers given by the Act, and did not attempt to do so.

As a general proposition it is undoubtedly true that as the powers of a municipal corporation are derived from the law and its charter, these powers cannot by ordinance be enlarged, diminished or varied. 1 *Dillon, Mun. Cor.* 317 (4th ed.) ; *Baltimore City* v. *Flack,* 104 Md. 136. But this rule can have no application where a city is expressly authorized by law to confer on a commission created by the law as an agency of the city, and vested with certain powers, such further powers as it may deem necessary for the proper execution of the work sought to be accomplished, and where the city, in pursuance of such authority, does not restrict or qualify the powers conferred by the law, but grants to the commission such additional powers as in its judgment are necessary and proper to be exercised by it in the discharge of the duties prescribed by the law. Sec. 6 of Ordinance No. 216 requires the Commissioners for Opening Streets "to perform the duties and functions in said Act provided for the Annex Improvement Commission," and in *Flack's Case* this Court said that "The power to adopt sec. 6 of the ordinance was expressly conferred on the Mayor and City Council by sec. 10 of the Act of 1904, and the power has been exercised in almost the exact language in which it was granted." In that case the right of the Mayor and City Council to confer on the Commissioners for Opening Streets the powers granted by the Act to the Annex Improvement Commission was not questioned and was distinctly recognized. By sec. 3 of the Act of 1904 the commission, in addition to the powers therein specified, were given "all powers necessary and proper in the exercise of said powers," and it was provided that "the Mayor and City Council of Baltimore are hereby authorized and empowered to grant by ordinance any further powers and duties it shall deem necessary for the proper execution of the improvements intended to be made by this Act." The powers which the

Mayor and City Council were authorized to grant were not the "powers necessary and proper in the exercise" by the commission of the powers expressly granted, for they were conferred by the Act, but were such *additional* powers as *it deemed* necessary for the proper execution of the work of the commission. The Mayor and City Council, as we have seen, is authorized by its charter to provide for benefit assessments, and if by Ordinance No. 216 it conferred on the Commissioners for Opening Streets, when acting as the Annex Improvement Commission, powers not expressly granted by the Act of 1904, it did so in pursuance of the provisions of that Act.

In *Flack's Case* it was contended that sec. 7 of Ordinance No. 216 was invalid because of the alleged unconstitutionality of sec. 10 of the Act of 1904, and that if it was not for that reason invalid it curtailed the powers of the Annex Improvement Commission, but the Court held that the Act of 1904 was constitutional "throughout all of its provisions," and as sec. 7 of the ordinance did not import "into Ordinance No. 216 any municipal legislation which is hostile to the Act of 1904," it was valid.

While in that case the Court was not dealing with the right of the Mayor and City Council to grant to the Commissioners for Opening Streets the power to make benefit assessments, it did, as we have said, recognize the right of the Mayor and City Council, under the provisions of the Act, to confer on the Commissioners for Opening Streets the powers of the Annex Improvement Commission. If by virtue of the Act the Mayor and City Council could confer on the Commissioners for Opening Streets extraordinary powers not previously possessed by them, there is no reason why it could not, under the express authority of the Act, grant to the commissioners such powers as were exercised by them in the discharge of their duties under the charter.

But it is not necessary to further discuss the authority of the Mayor and City Council to pass Ordinance No. 216, for in *Flack's Case* this Court said that the Act of 1904 was "constitutional throughout all of its provisions." The authority given

by the Act to the Mayor and City Council to grant to the Commissioners for Opening Streets additional powers is, therefore, a valid provision, and the Mayor and City Council had the right to exercise it.

Appellant further insists that the intention of the Legislature, as gathered from the provisions of the Act, was that benefit assessments should not be made, and for that construction relies upon sections 1, 6 and 7. Section 1 provides that "The proceeds of the sale of said stock shall be used *only* for the purpose of providing the costs and expenses of condemning, opening, grading, paving and curbing streets, avenues, lanes and alleys of the Annex portion of Baltimore City." The evident meaning of this provision is that the city shall not apply the money received from the sale of the stock to other purposes than those specified by the Act. Section 6, after declaring that the commission shall not pay for the improvement of sidewalks, provides that the costs of such improvements shall be paid by the owners of the property, and that the commission shall assess the property for the same; and section 7 authorizes the commission to contract for the work of opening, paving, etc., or to employ the necessary laborers, etc.; "and perform the work under their own supervision;" and to pay the costs of said work and all necessary expenses of the commission out of the proceeds of the loan provided for by the Act.

We do not find in either of these sections any references to assessments of benefits in connection with the costs and expenses of opening streets, and as the charter expressly provides for such assessments, and the rule is that exemptions from taxations are to be strictly construed, it cannot be successfully contended that they evidence an intention of the Legislature to exempt property in the annex portion of the city from such assessments.

In *Richmond* v. *Daniel,* 14 Gratt. 387, referred to in a note to sec. 763 of 2 *Dillon, Mun. Cor.* (4th ed.) the Court held that "exemptions from taxation are to be construed strictly, and when the power of taxation has been once con-

ferred, it is not to be crippled or destroyed by strained inter-
pretation of subsequent laws."

In the case of *Sindall* v. *Baltimore City*, 93 Md. 526, this
Court said: "This proviso is a restriction of the power of the
municipality to levy more than a designated rate of taxes on
property annexed to the city limits, until a prescribed condi-
tion has been complied with. Like every other exemption
from taxation it must be strictly construed. The taxing
power is never presumed to be surrendered, and therefore
every assertion that it has been relinquished must, to be
efficacious, be distinctly supported by clear and unambiguous
legislative enactment." See also *Balto.* v. *Greenm't Cem-
etery,* 7 Md. 517, and cases collected in note to *Perkins' Edi-
tion.* The inquiry in this connection is not whether the Act
conferred on the commission power to make benefit assess-
ments, but whether the provisions of the Act show such a clear
and well defined purpose of the Legislature to prohibit such
assessments as to render invalid an ordinance requiring the
commissioners to make them, and passed in pursuance of an
authority to grant to the commissioners additional powers.
Judged from that point of view, and assuming that the Leg-
islature did not by the Act grant to the commission power to
make assessments, it was necessary to make other provision
for the payment of the costs and expenses, and it does not,
therefore, follow because such provision was made that the
Legislature intended to prohibit the Mayor and City Council
from requiring benefit assessments to be made in the event
that it deemed proper to do so.

As the Act of 1904 authorizes the Mayor and City Council
to grant to the commission such further powers as it deemed
necessary and proper, and as there is nothing in the provi-
sions of the Act prohibiting the Mayor and City Council, in
the exercise of that authority, from conferring on the com-
missioners power to make benefit assessments, Ordinance No.
216, which requires the commissioners, in opening streets in
the Annex portion of the city, to make such assessments, was a
valid exercise by the Mayor and City Council of the power

given to it by the Act, and the order of the Court below overruling the motion to quash the proceedings of the Commissioners for Opening Streets must, therefore, be affirmed.

We must not, however, be understood as determining that an appeal lies to this Court from an order of the Baltimore City Court overruling a motion to quash the proceedings of the Commissioners for Opening Streets in opening streets, but as the right to appeal in this case was not questioned by counsel, and as the question of the right of the commissioners to assess benefits is one of public interest, we have deemed it proper to decide it.

*Order affirmed with costs.*