ALLEN, Acting Chief Judge.
The Tax Assessor, together with the Tax Collector and Board of County Commissioners of Osceola County, defendants below, are appealing an adverse final decree for in-junctive relief which declared a 1960 assessment of certain agricultural lands invalid.
In their complaint plaintiffs alleged that the assessment of their agricultural lands *366 for 1960 was made contrary to the provisions of § 193.11(3) F.S.A. The prayer for relief sought to enjoin collection of the 1960 tax and further that a mandatory injunction issue requiring defendants to reassess plaintiff’s property. The material facts relevant to this dispute are incorporated as findings in the final decree which reads as follows:
“4. That the plaintiffs have proven that there has been an unlawful assessment of the lands involved in this suit for the reasons hereinafter found and set forth, to-wit:
“a. Since 1949 until 1960 the present tax assessor of Osceola County annually appraised the real property situated in the County by using a system of recopying the same assessment roll over and over, picking up improvements and giving a little change where several improvements were being made to the property. The assessor was aware for some time that he had not assessed the lands in Osceola County at its full cash value as required by law.
“In 1960 the Board of County Commissioners pursuant to the law and acting upon an agreement with the County Tax Assessor hired a professional appraisal firm for the purpose of modernizing and up-dating the assessment methods and assessment records of the County. A comprehensive .survey was made by this firm. It clearly appears from the record that the appraisal methods of the professional firm were approved and adopted by the County Tax Assessor in making up the 1960 Tax Roll. It further appears clearly from the evidence that an honest endeavor was made by all concerned to appraise all the property in the County at its full cash value regardless of its use on a fair and equal basis. Such an appraisal as concerns the lands herein involved departed from the essential requirements of F.S. 193.11(3) in two particulars:
“(1) The evidence clearly shows that all the properties involved in this suit were agricultural properties on January 1, 1960, yet the appraisal methods employed failed to assess the properties at their full cash value solely as agricultural lands. It was freely admitted that in interpreting F.S. 193.11(3) the assessor eliminated the words ‘as agricultural lands.’ The interpretation of the statute in question by the assessor and the professional appraisal firm was that in arriving at the full cash value of agricultural lands such lands should be assessed on an acreage basis not necessarily as agricultural lands.
“The plain unambiguous words in the statute clearly lays down a standard for the assessor to follow in assessing agricultural lands. It provides:
“ ‘All lands being used for agricultural purposes shall be assessed as agricultural lands upon an acreage basis, regardless of the fact that any or all of said lands are embraced in a plat of a subdivision or other real estate development. Provided, “agricultural purposes” shall include only lands being used hi a bona fide farming, pasture or grove operation by the lessee or owner, or some person in their employ. Provided shed nurseries, or nurseries under cover, shah not be termed agricultural and shall be excluded from this law. Lands which have not been used for agricultural purposes prior to the effective date of this law shall be prima facie subj ect to assessment on the same basis as assessed for the previous year, and any demand for a reasessment of such lands for agricultural purposes shall be subject to the severest scrutiny of the county tax assessor to the end that the lands shall be classified properly. (Emphasis supplied.)’
“In keeping with the mandatory requirements of our constitution and the *367 laws regarding uniformity and equality in assessment of property the Legislature has provided by F.S. 193.11(3) a standard for the assessment of lands being used for agricultural purposes. Under the statute the assessor has the duty to assess all lands being used for agricultural purpose as agricultural lands (emphasis supplied). This does not necessarily mean that the valuation as agricultural lands must be based on the then current agricultural use of the land. The valuation may be based upon the highest and best agricultural use of the land if in the judgment of the assessor the agricultural lands are worth more for other agricultural purposes than the present use. All such assessments must be at the full cash value as agricultural lands. In the absence of any attack on the constitutionality of F.S. 193.11(3) we must presume the statute to be valid.
"(2) The evidence further reveals that in trying to determine full cash value for assessment purposes the assessor and his assistants applied a front foot value to all lands lying adjacent to lakes and roads at a depth of 200 feet. This was a line established by the assessor without reference to the statutory mandate that agricultural lands were to be assessed on an acreage basis. Nor is there any evidence of any custom established by the real estate market in Osceola County that agricultural lands (as defined by the statute) were customarily bought and sold by the front foot on a lake or a road.
“It therefore follows that there has been an unlawful assessment of the lands involved in this suit. The plaintiffs are entitled to the relief sought.” (Emphasis added.)
Whereupon the lower court decreed that the collection of the 1960 tax on the lands herein involved be enjoined and that the tax assessor be mandatorily enjoined to reassess said lands in accordance with the decree. The lower court also decreed that taxes paid into the registry of the court be refunded to plaintiffs and that costs incurred by plaintiffs in the suit be charged against defendants.
This appeal followed with both assignments and cross-assignments of error.
The position of the appellants, assessor, et al., is that the lower court erred in interpreting § 193.11(3) F.S.A. as requiring an assessor to appraise agricultural lands with sole regard to their use as agricultural lands in ascertaining their value. They also challenge the finding that the front foot method of evaluating certain of the lands in question does not comport with the statutory mandate to assess agricultural lands on an acreage basis.
Appellees contend not only that agricultural land must be assessed as such but, in addition, on their cross-appeal take the position that the lower court erred as a matter of law by stating in its decree that agricultural land may be appraised under § 193.-11(3) F.S.A. at its highest and best use as agricultural land without regard to the current use to which such land is being put. To the contrary they state that the lower court erred by not decreeing as a matter of law that agricultural land must be appraised with regard only to the use of the land as of the effective date of the assessment.
Both parties urge that the constitutionality of § 193.11(3) was not an issue in the lower court and that no constitutional question is involved in this appeal.
Subsection (3) of § 193.11, Florida Statutes, F.S.A., was added to that section by House Bill No. 275 which was enacted into law by the Legislature as Chap. 57-195, Laws of Florida (1957). The title of that act reads:
“AN ACT relating to the assessment for taxes of lands used for agricultural purposes; amending Section 193.11, Florida Statutes, by providing for assessment of such lands upon a *368 valuation per acre as agricultural lands.”
No appellate court opinion has yet been reported construing the added subsection (3), however, in Blount v. Hansen, Fla. App.1961, 126 So.2d 610, this court had the identical question before it wherein we affirmed without opinion a final decree from the Circuit Court of Broward County which adopted the same position of appellants, assessor, et al., in the instant case. That decree in effect held that agricultural lands shall be assessed at their full cash value in accordance with subsection (1) of § 193.11 and that subsection (3) only requires agricultural lands to be assessed as acreage and not as separate lots whether embraced within a subdivision plat or not. In other words, the import of the final decree in the Blount case, which this court affirmed, is that agricultural lands should be assessed at full cash value in the same manner as all other lands, the only difference being that they will be assessed on an acreage basis. Thus, an acreage assessment of agricultural lands at full cash value, taking into consideration any and all uses which are reasonable in arriving at full cash value and not just agricultural use would conform to our decision in the Blount case. The assessment which the lower court declared invalid in the instant case was such an assessment.
The only other opinion passing on the effect of § 193.11(3) is one written by the Attorney General. Rep. Att’y Gen. Fla. 367 (1957). The Attorney General concluded that subsection (3) did not in any way alter the requirement in subsection (1) that all real estate shall be assessed at full cash value. Impliedly, this opinion means that subsection (3) did not require any change in assessment valuation standards being followed prior to its passage.
Both parties to this appeal, as stated before, say that there is no constitutional question involved. They then both take the position that the statute in question should be accorded the traditional presumption of constitutionality, proceeding from that premise to reach opposite conclusions with reference tO' the impact of the constitution on the statute involved.
The construction urged by appellees in effect is that the Legislature in passing § 193.11(3) intended to provide tax relief for agricultural interests which are purportedly in danger of being taxed from their land as a result of increasing urban expansion. This danger arises as urban expansion draws near to or engulfs farm, pasture or grove land which in turn causes this land to increase in value as it comes to be desirable for concentrated residential, industrial or other urban use. The increase in value for these purposes results in higher' assessments and higher taxes on agricultural land so located which can make it economically impossible for the owner to continue with an agricultural operation thereon.
Appellees argue that § 193.11(3) provides for a discriminatory tax assessment in favor of agricultural lands as opposed to all other types of lands. Their contention is that such lands can be evaluated and assessed with reference only to their use as agricultural land and to no other use to which they might reasonably be put. Such a requirement imposed on assessment procedures would, in light of present land use trends, normally result in a lower assessment for agricultural lands than would otherwise be the case. The only words in § 193.11(3) which can bear out such a contention are the words “shall be assessed as agricultural lands” with emphasis on the underscored portion of the quoted phrase. If this phrase means that only agricultural use can be considered in evaluating agricultural land, it is somewhat less than definitive in making that meaning clear.
A similar act giving a more positive indication of legislative intent was passed in Maryland in 1957. Md.Laws 1957, ch. *369 680, § 1(17) (b). That act reads, as quoted from 13 U.Fla.L.Rev. at 483, as follows:
“ 'Lands which are actively devoted to farm or agricultural use shall he assessed on the basis of such use, and shall not be assessed as if subdivided or on any other basis. The State Tax Commission shall have the power to establish criteria for the purposes of determining whether lands subject to assessment under this sub-section are actively devoted to farm or agricultural use by the adoption of rules and regulations. Such criteria shall include, but shall not be limited to, the following:
“ ‘(1) Zoning applicable to the land.
“‘(2) Present and past use of the land including land under the soil bank provisions of the agricultural stabilization act of the United States Government.
“ ‘(3) Productivity of the land including timberlands and lands used for reforestation.
“‘(4) The ratio of farm or agricultural use as against other uses of the land.’ ”
In State Tax Commission v. Wakefield, 1960, 222 Md. 543, 161 A.2d 676, the above act was declared unconstitutional by the Court of Appeals of Maryland. The court held that the statute wás contrary to the limitations of land classification permitted for tax purposes in Article 15 of the Maryland Declaration of Rights, quoted from 161 A.2d 678 as follows:
“ ‘That the levying of taxes by the poll is grievous and oppressive and ought to be prohibited; that paupers ought not to be assessed for the support of the government; that the General Assembly shall, by uniform rules, provide for separate assessment of land and classification and sub-classifications of improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform as to land within the taxing district, and uniform within the class or sub-class of improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy; yet fines, duties or taxes may properly and justly be imposed, or laid with a political view for the good government and benefit of the community.’ ”
The court stated at 161 A.2d 679:
“Under the terms of the 1915 amendment to Article 15, it is clear that the General Assembly has power to classify and subclassify both improvements on land and personal property, so long as any such classification or subclassification is not arbitrary or unreasonable. In the case of ad valorem taxes, the application of a lower rate of assessment or taxation to one or more classes of property than to others sets up a classification which operates practically to grant a partial exemption in favor of the class or classes subject to the lower rate. Doubtless because of this practical effect this Court, in speaking of the restrictions (chiefly as to rates rather than assessments), imposed upon taxation for city purposes of property in the area annexed to the City of Baltimore by the Annexation Act of 1888 (Ch. 98 of the Acts of that year), has referred to them a number of times as exemptions, at least twice as partial exemptions. See Daly v. Morgan, 69 Md. 460, 470-471, 16 A. 287, 1 L.R.A. 757 (‘qualified exemption’); Sindall v. City of Baltimore, 1901, 93 Md. 526, 529-530, 534, 49 A. 645; United Railways & Electric Co. of Baltimore v. City of Baltimore, 1901, 93 Md. 630, 634, 49 A. 655, 52 L.R.A. 772; City of Baltimore v. Rosenthal, 102 Md. 298, 305, 62 A. 579 (‘partial exemption’), City of Baltimore v. Gail, 106 Md. 684, *370 692, 68 A. 282 (‘partial exemption’) ; Lauer v. City of Baltimore, 1909, 110 Md. 447, 457, 73 A. 162, quoting from Sindall; and Williams v. Broening, 135 Md. 226, 236, 108 A. 781.
“But even when we say that the Farm Assessment Act creates a partial exemption from ad valorem taxation of land used for agricultural purposes we do not thereby solve the problem. The underlying question is whether or not the Legislature has the power to grant such an exemption in the face of the terms of Article 15 of the Declaration of Rights as amended in 1915. Such an exemption involves a separate classification (from other land) of land used for agricultural purposes, but the validity of such a classification rests not solely upon the reasonableness thereof, but more fundamentally on the power of the Legislature to make it at all.”
The court treated the statute as making a classification not permitted by Article 15 of the Maryland Declaration of Rights, supra.
In meeting the State Tax Commission’s argument that the statute amounted to a valid partial exemption which was within the power of the Legislature to grant, the court stated at 161 A.2d 685, 686:
“The fundamental difficulty with the Commission’s argument in support of the validity of the Farm Assessment Act on the ground that it is a partial exemption, is that it would establish a power of classification which Article 15 denies, simply by giving it another name. We find the general rule against doing indirectly that which cannot be done directly clearly applicable here and of compelling force, even against the Commission’s argument that the greater includes the less and, hence, that a partial exemption is permissible because a complete exemption might have been granted. As has often been stated, taxation is an intensely practical matter. (Indeed, it is because of its practical operation, rather than the terms in which it is expressed, that the Commission contends that the Farm Assessment Act operates to create a partial exemption. It certainly is not called one.)
“The objections to a partial exemption because it undermines uniformity of taxation have been recognized and stated in some cases in other States having constitutional limitations similar to ours. See Knowlton v. Board of Supervisors of Rock County, 9 Wis. 410 (commented on in a note in 1953 Wisc.L.Rev. 141); Hale v. City of Kenosha, 29 Wis. 599; In re Opinion of the Justices, 195 Mass. 607, 84 N.E. 499; Inhabitants of Cheshire v. County Com’rs of Berkshire County, 118 Mass. 386; In re Opinion of the Justices, 324 Mass. 724, 85 N.E.2d 222. See also Cooley, Constitutional Limitations (8th Ed.), pp. 1091-1092.
“In the Cheshire case, it was held that a statute providing that dams, reservoirs and lands under the same used to supply water for manufacturing were to be taxed at the same rate as the lands surrounding these properties, violated the uniformity requirement of the State constitution. The court did not consider the statute to be an exemption, but in the recent Massachusetts Opinion of the Justices above cited, where the proposed statutes under consideration would have exempted new residential buildings from taxation for a period of five years, the Justices, in commenting on the Cheshire case, said (85 N.E.2d at pages 227-228) : “but whether or not called an exemption the effect would have been to have taxed the land with the improvements at the value of land, for the purpose, no doubt, of encouraging manufacturing, just as the effect of the present proposed bills would be to tax the land upon which are the buildings at the value of the land, for the purpose, no doubt, of encouraging building. * * * *371 Such exemptions would, we think, constitute in themselves a serious inroad upon the proportional principle and could readily serve as stepping stones toward still further encroachments.’
“In the earlier Opinion of the Justices above cited, it was stated (195 Mass, at page 614, 84 N.E. at page 503): ‘A right to exempt as a whole even if it exists does not authorize a partial exemption conditional upon the property exempted paying an arbitrary percentage which is not proportional.’ We may observe that under our Farm Assessment Act there would be no semblance of uniformity as between assessments on lands used for agricultural purposes and adjacent lands even within a single county or other taxing district, for the difference in valuation would vary from one area to another depending upon the extent to which the value of land used or held for residential, commercial or industrial purposes exceeded the value of land used for agricultural purposes.
* * * * * *
“We are not here dealing with exemptions up to specified monetary values of some kinds of properties or quantities of land, or other like exemptions. Some of the longest established and well recognized exemptions from taxation involve such limitations on the extent of the exemption granted, and nothing in this opinion is intended to challenge their validity. To avoid still further protraction of this opinion, suffice it to say that they have the sanction of history (Niles, op. cit., p. 32; and cases above cited with regard to the power of the Legislature to grant full exemptions) and that limitations as to amount or quantity may find support in very practical considerations or in the purposes which underlie the Statute of Mortmain and its present equivalent or successor in our Constitution, Article 38 of the Declaration of Rights.
“In an annotation in 111 A.L.R. at p. 1486, under the heading Dúcrimination for purposes of property taxation betzveen agricultural lands and other real property, it is stated that: While there is some conflict among the authorities, a majority of the cases from jurisdictions whose constitutions require taxes to be uniform hold that a classification of land for the purpose of property taxation as agricultural and otherwise results in an unconstitutional discrimination.’ Such was the view taken by the Supreme Court of New Hampshire in In re Opinion of the Justices, 76 N.H. 609, 85 A. 757. As a result of a constitutional amendment subsequently adopted which permitted special tax treatment for reforested land the New Hampshire court was of the opinion that a properly drawn statute granting such treatment 'would be valid. In re Opinion of the Justices, 99 N.H. 532, 114 A.2d 327. The 1915 amendment of our Article 15 contains no provision as to land comparable to the New Hampshire constitutional . amendment.
:{* if: }{« # ‡
“We hold that the Farm Assessment Act attempts to set up a separate classification of land for tax purposes, that in so doing it contravenes the limitations upon classification contained in the present Article 15 of the Declaration of Rights and hence is unconstitutional.”
A separate classification of farm land for tax purposes was thus found not to be expressly permitted by Article 15 of the Maryland Declaration of Rights, supra. Since it was not permitted, the court determined that the statute which accomplished such a classification was unconstitutional in that it violated the uniformity of taxation requirement appearing in said article. The court was apparently of the opinion that the uniformity requirement extended to all real property and among the various classes and species thereof.
*372 In Corporation of Sevierville v. King, 1939, 182 Tenn. 143, 184 S.W.2d 381, a statute provided that all farming lands within the boundaries of a municipality and not subdivided into city lots were relieved of taxation by the municipality. The Supreme Court of Tennessee held the statute unconstitutional as violative of a constitutional provision requiring uniform taxation.
In Switz v. Kingsley, 1961, 69 N.J.Super. 27, 173 A.2d 449, a statute providing that “In the assessment of acreage which is actively devoted to agricultural use, such value shall not be deemed to include prospective value for subdivisions or nonagricultural use * * was held to create a tax classification in contravention of the uniformity provisions of the New Jersey constitution.
In Oklahoma, a levy of a county tax which applied a 10 mill rate to rural property and an 8.5 mill rate to urban property was held to violate the uniformity clause in -that state’s constitution. Custer County .Excise Board v. St. Louis-San Francisco Ry. Co., 1949, 201 Okl. 528, 207 P.2d 774. The lack of uniformity in this case applied to the rate of taxation whereas the uniformity lacking in the Maryland and New Jersey cases, supra, was in reference to the -method of valuation for assessment purposes. In the Tennessee case, supra, farm land had been entirely relieved from taxation by a municipality.
In Florida, Article IX Section 1, F.S.A., of our constitution requires a uniform and ■equal rate of taxation and further requires .a just valuation of property. We will therefore attempt, with reference to these two requirements, to test the constitutionality of ■the construction given by the lower court to § 193.11(3). That construction was, in ■effect, that for the purpose of valuation agricultural lands are classified in a real property category separate and distinct from other types of real property. This construction hinges on the interpretation given below of ■the words “all lands being used for agricultural purposes shall be assessed as agricultural lands * * *.” To further pinpoint the issue we will treat § 193.11(3) as a “valuation” statute as opposed to one dealing with millage rate.
It has been stated to be a well settled rule in this State that the uniform and equal requirements of Article IX § 1 apply solely to the rate of taxation and have no relation to valuation. Rorick v. Reconstruction Finance Corporation, 1940, 144 Fla. 539, 198 So. 494. This principle was reaffirmed by the Florida Supreme Court in Schleman v. Connecticut General Life Ins. Co., 1942, 151 Fla. 96, 9 So.2d 197. However, see the language appearing as dictum in Armstrong v. State ex rel. Beaty, Fla.1954, 69 So.2d 319 at 321, wherein the Court stated:
“* * * We still have the principle that the method of assessment shall be equal and uniform for each piece of property in the taxing district. * * *” (Emphasis supplied.)
Notwithstanding the Armstrong case we must assume that the construction given § 193.11(3) in the lower court would not contravene the uniformity provision in Art. IX § 1. But cf. Sanders v. Crapps, Fla. 1950, 45 So.2d 484.
We next consider whether that construction thwarts the constitutional mandate to the Legislature to secure a “just valuation” of all .property. With all that has been written and said in recent years with reference to the legislative directive to assess real property at “full cash value” appearing in § 193.11(1) F.S.A., we deem it appropriate to consider to what extent “full cash value” may equate with a “just valuation.”
Subsequent to the adoption of Article X, § 7 of the Florida Constitution providing for the exemption of homesteads, it has been held that assessments at less or greater than full cash value discriminate respectively in favor of and against exempt properties. Cosen Inv. Co. Inc. v. Overstreet, 1944, 154 Fla. 416, 17 So.2d 788; Schleman *373 v. Connecticut General Life Ins. Co., 1942, 151 Fla. 96, 9 So.2d 197. Language in two ■cases serves to indicate that "full cash value” has come to be viewed as synonymous with “just valuation.”
In Schleman v. Connecticut General Life Ins. Co., supra, 9 So.2d at 198, the Supreme ■Court stated:
“It is well to bear in mind the provisions of Section 1 of Article IX of the Constitution which places upon the legislature the duty to provide a ‘uniform and equal rate of taxation’ and to ‘prescribe such regulations as shall secure a just valuation of all property, both real and personal * * *.’
“As has been announced by this court (Rorick et al. v. Reconstruction Finance Corp. et al., 144 Fla. 539, 198 So. 494), the former provision applies solely to the rate of taxation. The latter deals with valuation and the legislature, in the two acts already mentioned, [predecessors of present § 193.11(1)] adopted the measure of ‘full cash value’ as the guide which the taxing official should follow. * * * ” (Emphasis supplied.)
The above language can be interpreted to mean that “full cash value” is the guide to ■a “just valuation.”
In State ex rel. Glynn v. McNayr, Fla. 1961, 133 So.2d 312, at 316, the Supreme 'Court in a case involving assessments at ■less than full cash value stated:
“In this regard, it has been held that so-called ‘full cash value’ does not lend itself to absolute certainty. In applying the requirement this Court has recognized that the local tax assessor must necessarily be accorded a reasonable leeway in the exercise of judgment as to valuations. It has been held that the judgment of the tax assessor will not be disturbed unless it can be demonstrated that he has acted arbitrarily and capriciously. State ex rel. Kent. Corp. v. Board of County Commissioners of Broward County et al., 160 Fla. 900, 37 So.2d 252; Schleman et al. v. Connecticut General Life Insurance Co., 151 Fla. 96, 9 So.2d 197. The just valuation mandated by the Constitution and extended to the legislative requirement of ‘full cash value1 imposes the responsibility on the taxing official to value and apply the rule to each individual parcel of land. * * * ” (Emphasis supplied.)
From the foregoing, it is our view that the construction given below to § 193.11(3) would contradict the “full cash value” requirement in § 193.11(1) and for that reason is of doubtful constitutionality.
We are aware of the decisions holding that classification of property for tax purposes does not offend against equal protection of the law guaranteed by the United States Constitution; Great Northern Railway Co. v. Whitfield, 1937, 65 S.D. 173, 272 N.W. 787, 111 A.L.R. 1475; Loftin v. Crowley’s Inc., 1942, 150 Fla. 836, 8 So.2d 909, 142 A.L.R. 626, cert. denied 317 U.S. 661, 63 S.Ct. 60, 87 L.Ed. 531; nor does it per se contravene the uniform and equal rate and just valuation provisions of the Florida Constitution. Levy v. Smith, 1851, 4 Fla. 154; Hayes v. Walker, 1907, 54 Fla. 163, 44 So. 747; State v. City of Miami, 1931, 103 Fla. 54, 137 So. 261; State ex rel. Attorney General v. City of Avon Park, 1933, 108 Fla. 641, 149 So. 409; L. Maxcy, Inc. v. Federal Land Bank of Columbia, 1933, 111 Fla. 116, 150 So. 248, 151 So. 276. None of these cases, however, justifies a conclusion that the “full cash value” requirement has built into it an implied dormant provision permitting the gauging of a full cash value assessment to a particular land use.
A differentiation in assessments which would result in systematically lower valuations being placed on lands used for agricultural purposes than on lands used for other than agricultural purposes also appears to amount to a partial tax exemp *374 tion being accorded to property devoted to a purpose not specifically enumerated as entitled to an exemption under the Florida Constitution. Section 1 of Article IX authorizes the legislature to exempt property used for municipal, educational, literary, scientific, religious or charitable purposes. None of these enumerated purposes can be so construed as to comprehend land used for agricultural purposes insofar as land so used does not also qualify for one of the six stated exemptions. The maxim of construction, expressio unius est exclusio al-terius, applies in this context. The 'Constitution, having specified permissible exemptions, has excluded others. L. Maxcy, Inc. v. Federal Land Bank of Columbia, supra, opinion adhered to 112 Fla. 835,- 151 So. 276; State ex rel. Burbridge v. St. John, 1940, 143 Fla. 544, 197 So. 131, 143 Fla. 876, 197 So. 549.
Our decision in this case, however, does not rest on constitutionality, both parties having repeatedly asserted that the constitutionality of § 193.11(3) is not being challenged in this cause. Moreover, it is unnecessary for a court to gratuitously decide a constitutional question. Wooten v. State, 1888, 24 Fla. 335, 5 So. 39, 1 L.R.A. 819; Johnson v. White Swan Laundry, Inc., Fla.1949, 41 So.2d 874; State ex rel. McClure v. Sullivan, Fla.1949, 43 So.2d 438; Henderson v. Antonacci, Fla.1952, 62 So.2d 5; 6 Fla.Jur., Constitutional Law § 52.
As we have indicated, however, the construction given § 193.11(3) by the lower court renders that statute of doubtful validity. In accordance with the presumption in favor of the constitutionality of legislative acts, a statute should, if possible, be construed to make it constitutional, rather than render it of doubtful validity, if to do so will not violate the apparent intent of the Legislature. Thomas v. Mills, 1932, 107 Fla. 385, 144 So. 882; Hillsborough County v. Kensett, 1932, 107 Fla. 237, 138 So. 400, 144 So. 393; Smetal Corp. v. West Lake Invest. Co., 1936, 126 Fla. 595, 172 So. 58; D'Alemberte v. State ex rel. Mays, 1908, 56 Fla. 162, 47 So. 489; 6 Fla.Jur., Constitutional Law § 78 et seq.
In City of Fort Lauderdale v. Des Camps, Fla.App. 1959, 111 So.2d 693, at p. 695, in an opinion written by Chief Judge Kanner, we held:
“The court, in construing a statute, must regard legislative intent as the guiding factor, and this intent must be given effect even if it appears to be contradictory to the strict wording of the statute and to the rules of construction. The literal interpretation should not be accorded if it leads to an unreasonable conclusion or to a result not intended by the lawmakers. State v. Sullivan, 1928, 95 Fla. 191, 116 So. 255. Moreover, a statute which is reasonably susceptible of two interpretations, one of which would render it clearly constitutional and one which would leave its constitutionality in. doubt, should be construed so as to-avoid unconstitutionality. In re Seven. Barrels of Wine, 1920, 79 Fla. 1, 83 So. 627; Langford v. Odom, 1919, 77 Fla. 282, 81 So. 469; and City of St. Petersburg v. Siebold, Fla.1950, 48 So.2d 291.”
Following these principles, it is therefore our view that the correct construction of § 193.11(3) is that which was placed upon it by the Attorney General in his opinion appearing in Rep. Att’y Gen. Fla. 367 (1957) which has been previously mentioned herein. That opinion, in which we concur, was to the effect that the addition of subsection (3) to § 193.11 in no way altered or built exceptions into the “full cash value” requirement enunciated in subsection (1). In other words, the same standards for arriving at a full cash value assessment which were in force before the passage of. subsection (3) were still in force after its passage.
Furthermore, if -the Legislature had intended to change or qualify the requirement to assess at full cash value we believe that *375 it would have done so with words of more positive import than “as agricultural lands.” A review of some of the acts and cases construing them involving land classification for valuation and assessment purposes leads to the conclusion that legislative intent to so classify is usually revealed by less equivocal language than appears in § 193.11(3). See State Tax Commission v. Wakefield, supra; L. Maxcy, Inc. v. Federal Land Bank of Columbia, supra; §§ 193.20 and 193.201, F.S.A.
We do not agree with the lower court that the mandate in § 193.11(3) to assess agricultural lands as agricultural lands lays down an unambiguous standard to assess such lands only with reference to their value for agricultural pursuits. The words which follow: “ * * * upon an acreage basis, regardless of the fact that any or all of said lands are embraced in a plat of a subdivision or other real estate development. * * * ” indicates that the real intent of the act was to obviate an assessment of agricultural acreage by lot or block should such acreage happen to fall partially or wholly within a subdivision plat. We construe the act as dealing strictly with the mechanics of assessment procedures and as having nothing to do with valuation. Simply stated, the act provides that agricultural lands wherever located shall be assessed on an acreage basis. That an acreage assessment may result, on a per lot basis, in agricultural lands being assessed slightly lower than other lands amounts to no more than a statutory recognition of how such lands are commonly bought-and sold and regulation of assessment procedures to accord therewith.
In sum, the lower court erred in construing § 193.11(3) as requiring agricultural lands to be assessed with reference only to their “full cash value” as lands to be used for agricultural purposes.
In view of the foregoing, the question raised on the cross-appeal of whether an .assessment of agricultural lands must be based on their current agricultural use is rendered moot. We will say, however, that no rule of law has been called to our attention that prescribes current use as the sole criterion for arriving at a “full cash value” assessment of land, whatever the variety.
We deal next with the question of whether the front foot method of evaluating some of the land violated the statutory proscription to assess on an acreage basis. Appellants assert that this method was only one factor considered in arriving at value and that the resulting assessment of lands so evaluated was actually on an acreage basis. An acreage assessment as opposed to a per lot assessment is analogous to volume buying in a mercantile enterprise. Presumably, the advantage to be gained from an acreage assessment is that the larger the block of land assessed, the lower the value per smaller unit of land within the block. Selling by the acre normally nets a lower overall return than selling by the individual lot within acreage. Further, it would seem to follow that land being used for agricultural purposes, whether embraced within a plat or subdivision or not, normally sells by the acre while it is in that state. This would be true whether the initial buyer intends to continue to use the land for an agricultural enterprise or whether he intends to carve up the land into house lots. The mandate to assess as acreage is not violated simply because acreage fronting on roads or lakes is evaluated by the front foot. As one of the appraisers testified in the lower court, appraising acreage fronting on a highway or lake by the front foot merely recognizes that a good part of the value of such land is derived from its being lake or highway frontage. Such an appraisal appears also to recognize a manner in which land bordering on highways and lakes is sometimes bought and sold, be it an acre or a lesser included lot. A resulting assessment based on such an appraisal merely amounts to a given acre being found to be worth more because of its frontage location than another acre not so located. The assessor was *376 therefore not acting improperly in using the front foot method of evaluating the land in question and the lower court should not for that reason have disturbed the resulting assessment.
In the course of preparing this opinion, we have received a copy of the Supreme Court’s opinion, released but not yet final, in the case of Franks v. Davis, Fla.1962, 145 So.2d 228. Mr. Justice Drew wrote the opinion of the Court. Mr. Justice Thornal wrote a dissenting opinion in which Mr. Chief Justice Roberts concurred.
The decree appealed held that Chapter 61-295, Laws of Florida 1961, amending F.S. Section 192.05 F.S.A., providing that “stock in trade” shall be assessed for taxation at 25 per cent of its value based on invoice cost, violates Article IX, Section 1, Florida Constitution, which reads in part:
“The Legislature shall provide for a uniform and equal rate of taxation * * * and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, education, literary, scientific, religious or charitable purposes.” (Emphasis supplied.)
The Court, in its opinion, stated that the manifest purpose of Chapter 61-295 is to classify stock in trade separately from other tangible personalty so as to permit assessment of the former at 25 per cent of its value whereas the latter is required to be assessed at “full cash value” under F.S. Section 200.06 F.S.A. The Court then determined that the question before it revolved “primarily around the problem of legitimate classification under constitutional provisions for a ‘uniform and equal rate of taxation’ and for a ‘just valuation of all property,’ except exemptions specifically permitted.”
The Court held that the classification attempted in Chapter 61-295 was not a legitimate exercise of the legislative power to classify property for taxation purposes. In so holding the opinion of the Court states:
“ * * * A specious argument might arise from the fact that the uniformity requirement of Article IX, supra, relates in terms to the rate of tax imposed, and Chapter 61-295 on its face simply alters the formula for valuation of a class of property already subject to separate assessment procedure. If rates cannot be varied directly, however, neither can that result be achieved indirectly by manipulation of the assessment basis upon which levy is made. Such is the recognized intendment of our provisions for a ‘uniform and equal rate of taxation’ as well as a ‘just valuation of all property,’ construed as securing equality of burden for ad va-lorem taxation in this State.” [The Court citing Camp Phosphate Co. v. Allen, 1919, 77 Fla. 341, 81 So. 503.]
Continuing, the opinion cites with approval Cooley, Taxation, Vol. I, 4th ed., § 298 for the quoted proposition “ ‘that a classification whereby one class of property is required to be valued at a higher per cent of its value than another class is not a reasonable dr permissible classification.’ ”
The Court also held that Chapter 61-295, by permitting stock in trade to be assessed at 25 per cent of its value, constituted an exemption from taxation not authorized by the Constitution. Quoting from L. Maxcy, Inc. v. Federal Land Bank of Columbia and State v. St. John, supra, the Court stated:
“ * * * ‘Undoubtedly the Legislature is without power to provide for exempting from taxation any class of property which the Constitution itself makes no provision for exempting. The principle has been more than once affirmed in this state that the Constitution must be construed as a limitation upon the power of the Legislature to provide for the exemption from taxation of any classes of property except those particularly mentioned classes specified in the organic law itself.’ Up *377 on this rationale alone the decree appealed must be affirmed(Emphasis supplied.)
Though not yet, at this writing, accorded the status of stare decisis, the reasoning of the Supreme Court in its opinion just discussed serves to buttress our conclusions hereinbefore arrived at.
The assessment at issue in this cause having otherwise been found valid by the lower court, the final decree appealed from is reversed with directions to reinstate in every particular that part of the 1960 assessment for Osceola County which was invalidated by said decree.
Reversed.
KANNER, J., concurs.